Lee DILLARD, et al., Appellants,

v.

SHAUGHNESSY, FICKEL & SCOTT ARCHITECTS, et al.,

and

Structural Engineering Associates, Inc., Respondents.

No. WD 47429.

Missouri Court of Appeals, Western District.

Sept. 28, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 2, 1993.

Robert Allen Horn, Kansas City, for appellant.

G. William Quatman, Kansas City, for Shaughnessy, Fickel & Scott.

Robert A. Babcock, Kansas City, for Structural Engineering Associates.

Before SPINDEN, P.J., and FENNER and HANNA, JJ.

FENNER, Judge.

Appellant Lee Dillard suffered serious injuries in a construction accident. At the time of his injury, Lee Dillard was working as a construction worker in the employment of P & S Masonry, Inc., a subcontractor of A.L. Huber & Sons, Inc. (Huber). Huber was the general contractor in the construction of the Church of the Nativity (the project) on behalf of the Catholic Diocese of Kansas City in Kansas (Archdiocese) as the owner. P & S Masonry was constructing a masonry wall at the project that fell on Lee Dillard injuring him. The project site was in Kansas.

Appellant Sheila Dillard is the wife of Lee Dillard and their minor children are Joshua, Justin, and Leah Dillard. Appellants William Jerome Dillard and Brittany Dillard are also minor children of Lee Dillard.

Respondent Shaughnessy, Fickel and Scott Architects, Inc. (SFS) was the architect hired by the Archdiocese to design the project. Respondent Structural Engineering Associates, Inc. (SEA) was hired by SFS as a subcontractor of SFS to provide engineering services for the project.

Appellants brought suit against respondents and others. Appellants represent that SFS and SEA had a duty to see that the wall in question was properly reinforced or braced during construction and that proper job site safety precautions and related inspections were undertaken.

SFS and SEA filed motions to dismiss or in the alternative for summary judgment. The trial court granted summary judgment on behalf of SFS and SEA finding that neither SFS nor SEA owed a duty to Lee Dillard for job site safety precautions or related inspections and further that section 44–501(f), K.S.A. Supp.1992,[1] provided statutory immunity to SFS and SEA.

In their appeal, appellants argue first that the trial court erred in granting summary judgment against them because there are unresolved issues of fact on the existence of a duty owed by SFS and SEA to Lee Dillard for job site safety. Secondly, appellants argue that section 44–501(f) does not provide statutory immunity to SFS and SEA. Since we do not find any unresolved issues of fact which preclude summary judgment, it is not necessary for us to discuss appellants' second argument, that is, whether or not section 44–501(f) provides statutory immunity to SFS and SEA.[2]

1. All references to section 44–501(f) are to K.S.A.Supp.1992.

2. In regard to section 44–501(f), it is noted that the parties argue different interpretations of the statute.

Section 44–501(f) reads as follows:

Except as provided in the workers compensation act, no construction design professional who is retained to perform professional services on a construction project or any employee of a construction design professional who is assisting or representing the construction design professional in the performance of professional services on the site of the construction project, shall be liable for any injury resulting from the employer's failure to comply with safety standards on the construction project for which compensation is recoverable under the

workers compensation act, unless responsibility for safety practices is specifically assumed by contract. The immunity provided by this subsection to any construction design professional shall not apply to the negligent preparation of design plans or specifications.

Respondents argue that section 44–501(f) specifically limits a design professional's liability to circumstances where safety responsibility is undertaken by contract or where injury is caused by negligent preparation of plans and specifications. In this regard, respondents contend that section 44–501(f) supersedes the Kansas Supreme Court's opinion in *Hanna v. Huer, Johns, Neel, Rivers & Webb*, 233 Kan. 206, 662 P.2d 243 (1983), as discussed infra in the body of this opinion, to the extent that a duty cannot be assumed outside the terms of the contract. Appellants argue that section 44–501(f) does not

Under Rule 74.04, a movant is entitled to summary judgment when the movant can establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. For purposes of Rule 74.04, a "genuine issue" exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts. *ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 382 (Mo. banc 1993). Additionally, in a summary judgment proceeding the facts stated in the affidavits and exhibits filed by defendant or plaintiff in support of its motion for summary judgment to which plaintiff or defendant filed no verified denial stand admitted for the purpose of the motion for summary judgment. *Cherry v. City of Hayti Heights*, 563 S.W.2d 72, 75 (Mo. banc 1978). Once a motion for summary judgment is made and supported by affidavit or exhibit, the adverse party cannot rest upon pleadings, but must respond by affidavit or otherwise as provided in Rule 74.04 setting forth specific facts showing that there is a genuine issue for trial. *Cherry*, 563 S.W.2d at 75; Rule 74.04(e). The party opposing a summary judgment must aver specific facts and not just doubts or speculation about a material issue. *Chrysler Credit Corp. v. Schroeder*, 724 S.W.2d 726, 727 (Mo.App.1987).

Appellants argue first that the trial court erred by finding that the record failed to establish a genuine issue on the existence of a duty owed by SFS and SEA to Lee Dillard for job site safety. We find that the record is void of any evidence to establish the existence of such a duty.

Appellants cite nothing in the record that supports their argument on appeal that the trial court erred by failing to find a genuine issue on the existence of a duty owed by SFS and SEA to Lee Dillard for job site safety. Appellants merely argue that if they had been allowed to proceed, it would have been possible for them to discover facts to support their claim of a duty owed by SFS and SEA.

Appellants argue that under Kansas law a duty owed by an architect or engineer to workers at a construction site may arise from contract or be assumed by actions outside the contract. Appellants rely chiefly upon *Hanna v. Huer, Johns, Neel, Rivers & Webb*, 233 Kan. 206, 662 P.2d 243 (1983), in support of their position on appeal.[3]

In *Hanna*, the Kansas Supreme Court held that generally the duty of an architect to supervise or administer construction work merely entails the duty to see that the building, when constructed, meets the plans and specifications for which the owner agreed to pay. *Id.* at 252. An architect by reason of his supervisory authority over construction does not assume responsibility for the day-to-day methods utilized by the contractor to complete the construction. *Id.* at 252. However, the court in *Hanna* further held that, in addition to any specific contractual obligation, an architect could assume a duty for safety of contractors and subcontractors on a job site intentionally or impliedly by the architect's actions. *Id.* at 252. To determine whether a duty for supervision of safety has been assumed beyond the terms of a contract depends upon the facts involved in a given case. *Id.* at 252. Among the factors deemed to be relevant are the following:

exempt a design professional from liability when a duty is assumed outside of the terms of a contract. Appellants argue that when a design professional is sued for a duty assumed, it is the design professional's own negligence, not that of the contractor, that forms the basis for the action.

It is not necessary for us to address this argument between the parties since we do not find a genuine issue, supported by the record, to show a duty on the part of SFS or SEA for job site safety, even if such duty can be assumed outside the terms of the contract.

3. There is no dispute between the parties that the substantive law of Kansas is applicable herein. Appellants take the position that Kansas law is applicable because the conduct causing the injuries and the injuries themselves occurred in Kansas. Respondents rely upon contract terms which they find make Kansas law applicable. Nonetheless, since the parties are in agreement that Kansas substantive law applies, we need not analyze the validity of their reasons. It suffices to say that the parties agree to the application of Kansas law in this appeal and we have no reason to question their position on the basis of the record herein.

(1) actual supervision and control of the work;

(2) retention of the right to supervise and control;

(3) constant participation in ongoing activities at the construction site;

(4) supervision and coordination of subcontractors;

(5) responsibility for taking safety precautions at the job site;

(6) authority to issue change orders; and,

(7) the right to stop the work.

*Id.* at 252–53 (citing *Hausam v. Victor Gruen & Associates*, 86 Ill.App.3d 1145, 42 Ill.Dec. 342, 408 N.E.2d 1051 (1980)).

In the case at bar, the Archdiocese entered into a contract with SFS whereby SFS agreed to undertake and perform certain architectural services in connection with the design and construction of the project. SFS in turn entered into a contract with SEA for SEA to provide structural engineering services in connection with SFS's contract with the Archdiocese. The contract between SFS and SEA incorporated the terms of SFS's contract with the Archdiocese.

In regard to this appeal, the relevant terms of the contract between the Archdiocese and SFS provided as follows:

Article 2.6.5.

The Architect shall visit the site at intervals appropriate to the stage of construction ... to become generally familiar with the progress and quality of the Work completed and to determine in general if the Work is being performed in a manner indicating that the Work when completed will be in accordance with the Contract Documents. However, the Architect shall not be required to make exhaustive or continuous on-site inspections to check the quality of the Work....

Article 2.6.6.

The Architect shall not have control over or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures, *or for safety precautions* and programs in connection with the Work, since these are solely the Contractor's responsibility under the Contract for Construction....

The Architect shall not have control over or charge of acts or omissions of the Contractor, Subcontractors, or their agents or employees, or of any other persons performing portions of the Work (emphasis supplied).

SEA's contract with SFS incorporated SFS's contract with the Archdiocese and required "cite visits during construction as required to meet the terms of [SFS's contract with the Archdiocese]."

The Archdiocese as owner also entered into a contract with Huber for Huber to act as general contractor. Thereafter, Huber contracted with P & S Masonry, Lee Dillard's employer, for certain masonry work on the project required of Huber under its contract with the Archdiocese.

The General Conditions of Huber's contract with the Archdiocese provided, in relevant part, as follows:

3.3.1. The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless Contract Documents give other specific instructions concerning these matters.

3.3.2. The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons performing portions of the Work under a contract with the Contractor; and

3.3.4. The Contractor shall be responsible for inspection of portions of the Work already performed under this Contract to determine that such portions are in proper condition to receive subsequent Work.

There were no contractual provisions which made SFS or SEA responsible for job site safety of the contractor or subcontractors. Additionally, although appellants speculate that if allowed to proceed they could establish that SFS and SEA assumed responsibilities outside the terms of their con-

tracts, there is no evidence in the record to show that either SFS or SEA assumed responsibility for job site safety beyond the terms of their contracts. To the contrary, the exhibits before the court show that the responsibility for job site safety was that of the contractor, not the architect or engineer.

Appellants argue on appeal that they should be allowed to pursue questions of whether SFS or SEA knew of dangerous conditions on the job site. There is no evidence in the record that raises a question of such knowledge. However, appellants appear to be arguing that they were not given a full and fair opportunity for discovery.

Appellants' argument of a lack of full and fair opportunity for discovery appears in the record for the first time on appeal. The record does not reflect that appellants made any request for additional discovery before the trial court and we will not convict the trial court of error for failing to do more than was requested. *Wulfing v. Kansas City Southern Industries, Inc.*, 842 S.W.2d 133, 159 (Mo.App.1992).[4]

The record does not support appellants' contention that there were genuine issues of fact which precluded summary judgment.

The judgment of the trial court is affirmed.

All concur.

---

4. Appellants represented in oral argument that counsel before the trial court, different counsel from appellate counsel, requested that a "discovery schedule" be established after the trial court advised the parties of its decision on respondents' motion for summary judgment. Such a request is not supported by the record on appeal, but even if it were, we would be hard pressed to declare an abuse of discretion by the trial court for ignoring what would appear to be an untimely effort to institute discovery.