**Charles C. RODGERS, et al., Respondent,**

v.

**RICHMOND MEMORY GARDENS, INC. et al., Appellant.**

**No. WD 49395.**

Missouri Court of Appeals, Western District.

March 28, 1995.

Robert M. Hill, Richmond, for appellant.

Robert H. Dunsford, Liberty, for respondent.

Before SPINDEN, P.J., and ULRICH and SMART, JJ.

SMART, Judge.

D. Sue Lauck and Richmond Memory Gardens, Inc. ("RMG") appeal from an order removing Ms. Lauck as the sole member of the Board of Directors of RMG and as trustee of the perpetual care fund of the cemetery. Three points are presented in this appeal in which defendants contend that the trial court erred by: (1) denying a motion to declare the action a class action pursuant to Rule 52.08; (2) denying a motion for summary judgment because plaintiffs were not governmental entities and because § 214.205, RSMo 1994,[1] limits the right to take control of a private cemetery to governmental entities; and (3) granting a monetary judgment against defendants because the evidence was never established that RMG was an endowed care cemetery as defined by § 214.300. The judgment of the trial court is affirmed.

RMG is a private cemetery located in Richmond, Missouri. On September 21, 1961, the then owners of RMG executed a document entitled "Richmond Memory Trust and Perpetual Care Fund For Richmond Memory Gardens, Inc., Richmond, Missouri." The stated purpose of the trust agreement was "to provide for perpetual care, upkeep and maintenance af [sic] all burial lots owned and sold by the Richmond Memory Gardens,

---

1. All sectional references are to Missouri Revised Statutes 1994, unless otherwise indicated.

Inc., of Richmond, Missouri." The document provided that $5.00 per grave space or 10% of the sale price of each lot, whichever was greater, would be placed in the trust and held for the purpose of providing perpetual care of the cemetery.

In 1964, RMG was sold to the family that currently operates it. D. Sue Lauck is the current director and has been the secretary treasurer of RMG since 1983. She is also the trustee for the perpetual care fund. At the time of the trial, 2,403 lots had been sold and, since 1957, there had been a total of $405,445.00 in gross sales. The total amount of funds which had been deposited in trust for perpetual care amounted to $5,597.50. No regular deposits to the trust had been made, although the standard sales contract used by RMG contained a provision stating that 10% of the gross sales price would be placed in trust and the interest used for maintenance and permanent care.

Ms. Lauck began to receive complaints about the maintenance of RMG, including complaints about the grass not being mowed, the road being muddy and ruts being cut into the grounds. Letters to the editor concerning the maintenance of RMG also started to appear in the newspaper. Unsatisfied with the condition of RMG and the lack of response to inquiries concerning the perpetual care fund, plaintiffs filed suit on August 15, 1990. The plaintiffs at the time of the trial were lot owners Charles Rodgers, Mildred Rodgers, Robert G. Russell, Lena Mae Russell and William Seward ("plaintiffs"). RMG, Ms. Lauck and her mother, Lillian M. Lauck,[2] were the defendants. The case was tried to the court on July 14, 1993.[3]

On March 11, 1994, the trial court rendered its judgment finding that RMG was an endowed care cemetery and that the sum of $40,544.50 should have been placed in trust. Finding that the current funds in the trust were less than the total required, the court determined that Ms. Lauck had breached her fiduciary duty to the plaintiffs. In fashioning a remedy, the court removed Ms. Lauck as director of RMG and as trustee of the perpetual care funds. The court appointed Harold K. Strobel,[4] J. Donald Jackson and Michael McCalley as directors of RMG for a term of three years. The plaintiffs were appointed as advisory directors. Ms. Lauck was ordered to pay $35,313.05 into the trust.

■ In Point I, appellants contend that the trial court erred in denying their motion to declare this action a class action because there were many other members of the class [5] that had the right to be represented in this suit. Appellants point to testimony given by two witnesses, a lot owner and a parent with two children buried at RMG, indicating satisfaction with the condition of RMG. They also raise the specter of future suits by those not joined in the current action.

"Determination of whether an action should proceed as a class action under Rule 52.08 ultimately rests within the sound discretion of the trial court." *Ralph v. American Family Mut. Ins. Co.*, 835 S.W.2d 522, 523 (Mo.App.1992) (citing *City of St. Peters v. Gronefeld*, 609 S.W.2d 437 (Mo.App.1980)). There is no requirement that a court must necessarily certify an action as a class action. The term "may" is used in Rule 52.08. Missouri courts, when construing statutes, hold that the word "may" considered in light of its plain and ordinary meaning implies alternate possibilities and discretion in the exercise of power. *See S.J.V. v. Voshage*, 860 S.W.2d 802, 804 (Mo.App.1993); *State v. Patterson*, 729 S.W.2d 226, 228 (Mo.App.1987); *Pfefer v. Board of Police Com'rs*, 654 S.W.2d 124, 128 (Mo.App.1983). This rule of construction

---

2. After the trial, but prior to judgment, Lillian M. Lauck died, and, as a result, was dismissed from the suit.

3. The transcript shows a date of August 14, 1993. The trial court's docket sheet, however, shows the date as July 14, 1993.

4. Harold L. Strobel did not accept his appointment. He was replaced by Kenneth Thompson.

5. This class, as defined by appellants, would consist of cemetery lot owners, heirs of those buried in the cemetery and other people interested in the cemetery. Appellants claim that these would "number in the hundred of thousands." No issue is raised herein as to whether defendants can force a class status on plaintiffs, as a general principle.

holds no less true for the Rule in the instant case.

Rule 52.08(b)(3) states that an action may be maintained as a class action when the prerequisites of subsection (a) are met and if the court finds "that a class action is superior to other available methods for fair and efficient adjudication of the controversy." Rule 52.08(a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The motion to convert the case to a class action was filed by defendants on June 23, 1993, approximately three years after the suit was originally filed and within a week of the scheduled trial date of June 28, 1993. Defendants claim that the plaintiffs were not representative of the class in that two other interested persons were satisfied with the maintenance of RMG. Defendants thus argued that plaintiffs were not representative of the class, but defendants failed to establish that anyone else would have been representative of the class. Moreover, the late date at which the motion was filed would not have contributed to the efficiency of adjudication which the class action rule has in view. Most significantly, however, it appears that by allowing the case to proceed without class certification, the interests of all lot owners and interested persons were protected as well as they could have been by a class action. Consequently, we hold that the trial court did not abuse its discretion in denying the motion to declare the action a class action. Point I is denied.

In Point II, appellants contend that the trial court erred in denying their motion for summary judgment because, they say, § 214.205 limits the right to take control of a cemetery to governmental entities and does not provide a private right of action. Section 214.205 is a statute pertaining to violations of nuisance ordinances. It states, in pertinent part:

If any cemetery ... is found to be in violation of a city, town, village or county nuisance ordinance for failure to cut grass or weeds, or care for graves, grave markers, walls, fences, driveways or buildings, the governing body of such city, town, village or county shall be authorized to take those actions necessary to restore and maintain the cemetery, and the governing body shall be authorized to charge the expenses of such actions against the cemetery.

The statute also defines the term "abandoned cemetery" and makes provision for the power of eminent domain to be exercised by the attorney general.

The statute is completely inapplicable to the instant case. Although the plaintiffs did complain that the grounds of RMG were not properly maintained, the essence of their suit involved the failure of defendants to maintain an endowed care fund in violation of the endowed care fund law §§ 214.270 to 214.410. This action did not concern the enforcement of a nuisance ordinance by a governmental entity or the exercise of eminent domain over an abandoned cemetery. Appellants' contention that § 214.205 legislatively pre-empted a private cause of action is misplaced. Point II is denied.

In Point III, it is claimed that the trial court erred in granting a monetary judgment against RMG and Ms. Lauck because it was never established that RMG was an endowed care cemetery. Appellants argue that since RMG was never actually called an "endowed care cemetery," but rather a perpetual care cemetery, it was not subject to § 214.290. The trial court's decision must be affirmed unless there is no substantial evidence to support it; it is against the weight of the evidence; or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The record supports the trial court's finding that RMG was an endowed care cemetery.

Section 214.270(12) provides a definition for an endowed care cemetery as, "a cemetery, or a section of a cemetery, which repre-

sents itself as offering endowed care and which complies with the provisions of sections 214.270 to 214.410." Section 214.280 was enacted in 1961. It required operators of all existing cemeteries to make an election, within ninety days following the effective date of the law, as to whether they would operate as an endowed care cemetery or as a nonendowed cemetery. The election, according to the 1961 statute "must be in writing and filed with the recorder of deeds for the county where the cemetery property is located." Section 214.280, RSMo Supp.1961.

The September 21, 1961 document entitled "Richmond Memory Trust and Perpetual Care Fund For Richmond Memory Gardens, Inc., Richmond, Missouri" was registered with the recorder on October 6, 1961, a week before the effective date of the statute, October 13, 1961.[6] The document is unmistakably an election to operate the cemetery as an endowed care cemetery. The trust agreement proclaimed that "[t]he purpose of said trust agreement is to provide for perpetual care, upkeep and maintenance af [sic] all burial lots owned and sold by the Richmond Memory Gardens, Inc., of Richmond, Missouri, and as such is declared to be herewith and herein an irrevokable [sic] trust and perpetual care fund." The conclusion that the trust document was an election to establish RMG as an endowed care cemetery is further strengthened by the provision by which the "corporation agrees to place in said fund $5.00 per grave space, or 10% of the sale price of the lot whichever is greater." This provision exactly parallels § 214.320, RSMo Supp.1961, which mandates that a minimum of 10% of the gross sales price or $5.00 per grave space sold, whichever is greater, be set aside in an endowed care fund.

To allow appellants to claim that the cemetery was not an endowed care facility because the magic words "endowed care" were never used, while RMG was referred to as a "perpetual care" cemetery, would be an elevation of form over substance. The terms appear to be used interchangeably, as evidenced by § 214.290 which states:

Any cemetery operator who within ninety days from the effective date of sections 214.270 to 214.410 elects to operate a cemetery which exists on the effective date of sections 214.270 to 214.410 as an endowed care cemetery or who represents to the public that **perpetual, permanent, endowed, continual, eternal care, care of duration or similar care** will be furnished cemetery property sold, shall before selling or disposing of any interment space or lots in said cemetery after the date of such election, establish a minimum endowed care and maintenance fund in cash in the amount required by section 214.300 unless an endowed care fund is already in existence to which regular deposits have been made (whether or not the fund then existing shall be in the minimum amount required under section 214.300). (Emphasis added).

RMG was held out to the public as a perpetual care cemetery. Ms. Lauck testified that the cemetery had been advertised in the Richmond daily newspaper as having perpetual care available. It could not be clearer that § 214.290 equates an endowed cemetery with one in which perpetual care is offered by its operator.

The term "permanent care" was also used in connection with RMG. The purchase agreements used by RMG in selling cemetery plots specifically provide that: "A permanent care fund shall be created by the Board of Directors of Richmond Memory Gardens, Inc., setting aside ten per cent (10%) or more of the gross sale price of all sections, sold at retail direct for ultimate use, until an amount large enough has been placed in trust, and only the interest of said fund shall be used for maintenance and to furnish permanent care in Richmond Memory Gardens, Inc." Permanent care is also among the terms listed in § 214.290.

Appellants' claim that § 214.300, RSMo Supp.1961 would preclude a finding that RMG is an endowed care cemetery is without merit. They claim that § 214.300 required a $25,000 cash deposit in a maintenance fund for endowed care status to attach. This contention is based upon a misreading of the

---

**6.** 1961 Mo.Laws, H.B. 238, p. 538.

statute. The statute provides that a cemetery operating as a nonendowed facility may qualify as an endowed care facility when certain conditions have been met, including "establishing a minimum care and maintenance fund in cash of one thousand dollars for each acre in said cemetery with a minimum of five thousand dollars and a maximum of twenty-five thousand dollars." Section 214.300(2), RSMo Supp.1961. The trust document states that $10,100.00 had been deposited to the perpetual care fund. Appellants did not honor the trust agreement or the purchase contracts. They did not comply with the Missouri statutes mandating their duty under the law for endowed care. We will not allow appellants to escape responsibility on their theory that noncompliance should somehow exempt them from endowed care status. The trial court's finding that RMG was an endowed care cemetery was supported by substantial evidence.

Appellants maintain that the trial court had no power to grant a money judgment against Ms. Lauck because she was merely a corporate officer. In *Graves v. Romney*, 502 F.2d 1062, 1064–65 (8th Cir. 1974) *cert. denied*, 420 U.S. 963, 95 S.Ct. 1354, 43 L.Ed.2d 440 (1975), the court defines the goal of equitable relief, saying equity does not seek "to punish the wrongdoer" but rather "to restore the plaintiff to the enjoyment of the right which has been interfered with to the fullest extent possible or to prevent violation of a right before the threatened injury is done or further violation after the injury has been partially effected." *Id.* Ms. Lauck was not insulated from liability by virtue of her corporate officership. Ms. Lauck was in charge of the day-to-day management of RMG and was trustee of the perpetual care fund. She knew the requirements of the trust document and the purchase agreements and made no regular deposits to discharge her duty. She also knew that the balance in the fund totaled only $5,597.50, a sum considerably below the 10% of total gross sales as specified in the documents in question. A corporation's officers are held liable when they have knowledge of, and participate in, the course of the corporation's wrongdoing. *Honigmann v. Hunter Group, Inc.*, 733 S.W.2d 799, 807 (Mo.App.

1987). The trial court's order, requiring that payment of $35,313.05 be made into the permanent care fund, was equitable under the circumstances of the instant case. Point III is denied.

The judgment of the trial court is affirmed.

All concur.