Anne BRATT, Personal Representative For The Estate Of Aleck Bratt, et al., Appellant,

v.

Leslie COHN, et al., Respondent.

No. WD 54265.

Missouri Court of Appeals, Western District.

Submitted Feb. 19, 1998.

Decided June 2, 1998.

Clem W. Fairchild, Kansas City, for appellant.

Joel K. Goldman, Kansas City, for respondent.

Before EDWIN H. SMITH, P.J., and SMART and ELLIS, JJ.

SMART, Judge.

This appeal involves the issue of whether a cemetery operated by a Jewish synagogue since 1907, which has never elected to be governed by the Cemetery Endowed Care Fund Law of Missouri, is subject to regulation as an endowed care cemetery because it established a fund for perpetual care.

Aleck Bratt, the deceased husband of Appellant Anne Bratt, filed suit against the

officers, trustees and directors of Sheffield Cemetery,[1] the congregation of Beth Israel Abraham and Voliner ("BIAV") and the Attorney General of Missouri, alleging that cemetery and synagogue officers were guilty of violations of § 214.270, et seq., the Cemetery Endowed Care Fund Law. Aleck Bratt purported to be suing in his own behalf as a relative of persons buried in the cemetery, and also as a representative of all owners of rights of interment and perpetual care. The trial court granted the defendants' motion for summary judgment on Counts II and III and dismissed Counts I and IV. The trial court denied plaintiff's request to file a second amended petition. Plaintiff-appellant contends that the trial court erred in finding that Sheffield Cemetery was not a cemetery governed by § 214.270, RSMo Supp.1997, and in denying them relief on their claims for relief, including their claim for an accounting. Appellant also challenges the trial court's denial of his motion to file a second amended petition.

## Factual Background

BIAV is an orthodox Jewish synagogue that owns and operates Sheffield Cemetery. Sheffield has been in existence since 1907 and, although it has not limited its sales to members of BIAV, it does restrict the sale of its burial plots to persons born of a Jewish mother, who agree to have their remains ritualistically washed and enshrouded and to have a closed casket ceremony. Sheffield is the only cemetery in the Kansas City area that exclusively provides these ritualistic orthodox Jewish burials. Aleck Bratt was, at various times from 1966 through 1993, the President of BIAV, a Board member of BIAV, and the Chairman of the Cemetery Committee.

Sheffield Cemetery offers perpetual maintenance. However, until 1994 no trust fund

---

1. Mr. Bratt filed suit against Leslie Cohn, Merrill Goldberg, Ron Dimbert, Gilbert Shoham (individually and as trustee of Sheffield Cemetery Perpetual Maintenance Trust), Max Wurzburger (individually and as trustee of the Sheffield Cemetery Perpetual Maintenance Trust), Robert Frager (individually and as trustee of the Sheffield Cemetery Perpetual Maintenance Trust), Dorothy Loeffler (individually and as trustee of the Sheffield Cemetery Perpetual Maintenance Trust),

Robert Spector (individually and as trustee of the Sheffield Cemetery Perpetual Maintenance Trust), Richard Silverstein, Congregation Beth Israel Abraham and Voliner, The Trustees of the Sheffield Cemetery Perpetual Maintenance Trust, and Jeremiah (Jay) Nixon, the Attorney General of Missouri. For the sake of convenience, we shall refer herein to the collective respondents as "the defendants" or "the trustees."

for the specific purpose of perpetual maintenance existed, although the appellant claims that the Constitution of BIAV provides for a perpetual maintenance fund, effective January 1, 1975. The appellant bases his claim on a provision in the "Constitution and By-laws" of BIAV. That provision states:

> A Perpetual Maintenance Fund for the sole purpose of maintaining the cemetery after its closing shall consist of a hundred thousand ($100,000) dollars plus a hundred ($100.00) dollars for each new burial and any other amount therein designated by the Board of Directors and approved by the congregation to be deposited into this fund and accrued interest or dividends effective January 1, 1975.

> This fund shall be managed by the Finance and Cemetery Committees meeting jointly. The joint committees, whose chairman shall be the President of the Congregation, shall direct the Treasurer as to which financial institution or financial assets this fund be placed, except if the Treasurer be directed otherwise by the Board of Directors as to the appropriate placement of this fund.

The trust created in 1994, the "Sheffield Perpetual Maintenance Trust" was created pursuant to § 352.010, § 352.020 and § 352.060 and was approved by the circuit court.

### The Litigation

Aleck Bratt filed suit against the respondents in his capacity as an individual and as representative of all owners of rights of interment and perpetual care and all those entitled to have their dead buried in the cemetery or who already have friends or relatives buried in Sheffield Cemetery. Plaintiff claimed in his petition that the synagogue diverted funds from the cemetery fund for operating costs of BIAV. Plaintiff alleged, *inter alia*, that (1) Aleck Bratt's relatives are buried in Sheffield and accordingly he is a beneficiary of the Sheffield Cemetery Perpetual Maintenance Fund and Trust, and has standing to sue; (2) the trust fund consists of $700,000.00 but should have been endowed with more funds when initially established; (3) the individual respondents caused monies

from the Trust to be used for the synagogue; (4) Sheffield Cemetery was not properly maintained; (5) the Trust is not maintained by a state or federally chartered banking institution; and (6) respondents are in violation of the Cemetery Endowed Care Fund Law.

Count I of the petition requests an accounting by respondents Cohn, Goldberg, Dimbert, Shoham and Wurzburger in their individual capacities and a judgment against them and against BIAV if they were found to have misapplied funds. Count II requests an accounting against the respondents in their capacity as trustees. Count III requests a declaratory judgment that Sheffield Cemetery Perpetual Maintenance Trust violates § 214.270. As relief, appellant asks that the Trust be declared null and void, that the trustees be removed, that the court appoint a successor trustee and order an accounting. Count IV requests an injunction enjoining individual defendants from violating § 214.340.

The respondents moved for partial summary judgment on Counts II and III on the grounds that the statute does not apply to Sheffield, arguing that Sheffield is not a cemetery governed by the statute (because it meets the qualification for exemption as a "religious" cemetery) and that BIAV never elected to make Sheffield an endowed care cemetery. The trial court granted the respondents' motion, determining that because of the religious nature of qualifications for burial of Sheffield, the cemetery is not a "cemetery" within the meaning of § 214.270(3), RSMo 1994.

The respondents filed a motion to dismiss Counts I and IV. The trial court granted this motion, determining that plaintiff had not met the requirements for pleading the case as a derivative action, citing, Rule 52.09 and *McLeese v. J.C. Nichols Co.*, 842 S.W.2d 115 (Mo.App.1992). The court also decided that, even if the action had been properly brought as a derivative action, the claims were still subject to dismissal since the statute had been determined to be inapplicable.

The plaintiff filed a motion for leave to file a second amended petition. The trial court denied the motion, finding that the proposed

amendment was also premised upon § 214.270, which the court had already ruled to be inapplicable to the case. The court also ruled that the proposed amended petition failed to state a claim because it failed to properly plead a derivative action. Appellant appeals from the trial court's grant of summary judgment on Counts II and III, from the dismissal of Counts I and IV, and from the denial of their motion to file a second amended petition. Aleck Bratt died after the appeal was taken in this case. Anne Bratt, the surviving spouse and personal representative of his estate, was substituted as a party in his stead.

### Request For Dismissal of Appeal

The defendants claim that the appellant's brief violates Rule 84.04 because its jurisdictional statement and statement of facts are inadequate. They ask that the appeal be dismissed. Although both the jurisdictional statement and statement of facts are not in strict compliance with the rule, the deficiencies are not sufficient to cause dismissal of the appeal. We prefer, when departure from the rules is not substantial, to decide a case on its merits rather than on the minor deficiencies of the brief. *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 647 (Mo. banc 1997). Therefore, we deny the request for outright dismissal of the appeal.

### Standard of Review—Summary Judgments

An appellate court's review of summary judgments is basically a *de novo* review. *Rice v. Hodapp*, 919 S.W.2d 240, 243 (Mo. banc 1996). We view the record in the light most favorable to the party against whom the judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The party moving for summary judgment has the burden of proving that it is entitled to the judgment as a matter of law. *Id.* at 382. Evidence in the record presenting a genuine issue of material fact will defeat a movant's right to summary judgment. *Id.* A genuine issue is defined as one that "implies that the issue, or dispute, must be a real and substantial one—one consisting not merely of conjecture, theory and possibilities." *Id.* at 378. The dispute must not be simply argumentative, frivolous or imaginary. *Id.* at 382. If the trial court's grant of summary judgment is sustainable on any theory as a matter of law, we will not set it aside on review. *City of Washington v. Warren County*, 899 S.W.2d 863, 868 (Mo. banc 1995). "The theory need not be one raised or argued by either party and may be raised sua sponte by the appellate court, provided the court incorporates principles raised in the petitions." *Id.* Here, there is no substantial disagreement about the facts material to whether the endowed care fund statutory provisions apply. Rather, the issue is simply a matter of law—one of statutory construction.

### The Cemetery Endowed Care Fund Law

The Cemetery Endowed Care Fund Law, §§ 214.270–410, was adopted in 1961, and has undergone several amendments. A thorough reading of the statute suggests that the primary purpose of the statute is consumer protection. The statute provides that all cemeteries may elect to register and operate as "endowed care cemeteries" in compliance with the provisions of the statute § 214.280.1, RSMo Supp.1997. Alternatively, at the cemetery's option, it may operate as a "nonendowed cemetery." § 214.280.1, RSMo Supp. 1997. The cemeteries electing to operate as endowed care cemeteries are subject to regulation as to the establishment and management of an endowed care fund for each such cemetery. Cemeteries electing to operate as nonendowed cemeteries are not subject to regulation as to the management of cemetery funds, but nonendowed cemeteries must post the following statement in conspicuous places and include the same on all written contracts, advertisements, and related materials: "This is a nonendowed cemetery." § 214.370.3, RSMo 1994. Operators of nonendowed cemeteries must also inform the purchaser of any burial space that the cemetery is a nonendowed cemetery. § 214.370.3, RSMo Supp. 1997. The statute provides criminal penalties for willful violation of the Cemetery Endowed Care Fund Law. § 214.410, RSMo 1994.

Sheffield Cemetery predated the Cemetery Endowed Care Fund Law, having been opened in 1907. Sheffield has never elected to register as an "endowed care cemetery." It was not until after this litigation commenced that Sheffield began compliance with the statutory provisions requiring notification that the cemetery is not an endowed care cemetery.

A "cemetery" is defined in § 214.270(3) as "property restricted in use for the interment of the human dead by formal dedication or reservation by deed but shall not include any of the foregoing held or operated by the state or federal government or any political subdivision thereof, any incorporated city or town, any county or any religious organization, cemetery association or fraternal society holding the same for sale solely to members and their immediate families." Section 214.270(29), RSMo Supp.1997, defines a "religious cemetery" as "a cemetery owned, operated, controlled or managed by any church, convention of churches, religious order or affiliated auxiliary thereof in which the sale of burial space is restricted solely to its members and their immediate families."

The plaintiff-appellant argues that the trial court erred in finding that Sheffield Cemetery was not governed by the financial management provisions of § 214.270. The appellant contends that the exemption for a "religious cemetery" is not applicable to Sheffield Cemetery because of sales of burial spaces to persons outside the membership of BIAV. We need not determine whether Sheffield qualifies for a religious exemption, either under the statute in question or under federal and state constitutional provisions protecting the free exercise of religion from excessive governmental regulation, because we conclude that the trial court was correct in its holding that Sheffield need not comply with the financial management requirements of the statute.

## Sheffield is a Nonendowed Care Cemetery

■ The defendants contend that even if Sheffield Cemetery does not qualify for exclusion as a "religious cemetery" within the meaning of the statute, the statute does not apply because BIAV never elected that Sheffield Cemetery be an "endowed care cemetery" pursuant to the statute. An "endowed care cemetery" is defined as "a cemetery, or a section of a cemetery, which represents itself as offering endowed care and which complies with the provisions of sections 214.270 to 214.410." § 214.270(13), RSMo Supp.1997. "Endowed care" is defined in the statute as "the maintenance, repair and care of all burial space subject to the endowment within a cemetery, including any improvements made for the benefit of such burial space. Endowed care shall include the general overhead expenses needed to accomplish such maintenance, repair, care and improvements. Endowed care shall include the terms perpetual care, permanent care, continual care, eternal care, care of duration, or any like term." § 214.270(12), RSMo Supp. 1997. Under the statute, an endowed care cemetery must meet two separate requirements. It must (1) represent that it offers endowed care and (2) comply with the provisions of §§ 214.270 to 214.410. § 214.270(13), RSMo Supp.1997. A "nonendowed care cemetery" is "a cemetery or a section of a cemetery for which no endowed care fund has been established in accordance with sections 214.270 to 214.410." § 214.270(25), RSMo Supp.1997.

There is no dispute that BIAV offers perpetual care. Warranty deeds include language showing that the money received in exchange for the lot is "in payment of the land hereinafter described, for opening and closing of the grave, and for the Perpetual Maintenance Assessment for Sheffield Cemetery." The parties do dispute, however, whether or not Sheffield Cemetery must comply with the provisions of §§ 214.270 to 214.410. Appellant contends that Sheffield Cemetery operated as, and held itself out to be, an endowed care cemetery because it purported to offer perpetual care. It was not until 1996 that Sheffield Cemetery registered as a nonendowed care cemetery. Appellant's position seems to be that any cemetery that offers some form of perpetual care is considered an endowed care cemetery. However, we conclude that the standard rules of statutory construction do not man-

date such a proposition. Section 214.270(25), RSMo Supp.1997, does not define a nonendowed care cemetery as one which does not offer perpetual care, but as one for which an endowed care fund has not been established in accordance with the statute.

The statutes require that an election be made for a cemetery to become an endowed care cemetery. Section 214.280, RSMo Supp.1997, provides:

> 1. Operators of all existing cemeteries shall, prior to August twenty-eighth following August 28, 1994, elect to operate each cemetery as an endowed care cemetery as defined in subdivision (12) of section 214.270 and shall register · such intention with the division and remit the required registration fee or, failing such election, shall operate each cemetery for which such election is not made as a nonendowed cemetery without regard to registration fees or penalties. Operators of all cemeteries hereafter established shall, within ninety days from the establishment thereof, elect to operate each cemetery as an "endowed care cemetery", or as a "nonendowed cemetery". Such election for newly established cemeteries shall be filed with the division, on a form provided by the division. Any such election made subsequent to August 28, 1994, shall be accompanied by a filing fee set by the division, and such fee shall be deposited in the endowed care cemetery audit fund as defined in section 193.265, RSMo. The fee authorized in this subsection shall not be required from an existing nonendowed cemetery.
>
> 2. The division may adopt rules establishing the conditions and procedures governing the circumstances where an endowed care cemetery elects to operate as a nonendowed care cemetery. In the event an endowed care cemetery elects to operate as a nonendowed care cemetery, the division shall make every effort to require such cemetery to meet all contractual obligations for the delivery of services entered into prior to it reverting to the status of a nonendowed cemetery.

Other statutory sections refer to the "election" of a cemetery to become an endowed care cemetery. Section 214.300, RSMo 1994, provides that a nonendowed cemetery may qualify as an endowed cemetery is by "so electing in compliance with section 214.280" by (1) establishing an endowed care fund in the amount determined in the section and (2) filing the report required by § 214.340. Section 214.290, RSMo 1994, sets the minimum endowed care fund "on election," stating, "[a]ny cemetery operator ... who represents to the public that perpetual, permanent, endowed, continual, eternal care, care of duration or similar care will be furnished cemetery property sold, shall before selling or disposing of any interment space or lots in said cemetery after the date of such election establish a minimum endowed care and maintenance fund...." The evidence shows that Sheffield Cemetery never filed a written election to become an endowed care cemetery. Sheffield Cemetery is not listed on the State's registry of endowed care cemeteries.

This court, in *Rodgers v. Richmond Memory Gardens, Inc.,* 896 S.W.2d 64 (Mo.App. 1995), examined the election requirement. In *Rodgers* the appellants argued that because their cemetery was never called an endowed care cemetery, but rather a perpetual care cemetery, it was not an endowed care cemetery. *Id.* at 67. We found, however, that the cemetery in question was an endowed care cemetery on the basis of a written election registered with the recorder of deeds as was then required by the statute. *Id.* at 68. Our conclusion that the cemetery in question was an endowed care cemetery was bolstered by the trust agreement's provisions for setting aside funds paralleling those required by the statute. Moreover, the purchase agreements used by the cemetery specifically provided for a "permanent care fund" by the setting aside of a percentage of the sale price. *Id.*

Although § 214.310, RSMo 1994, provides that any cemetery operator who elects to operate a new cemetery as an endowed care cemetery or who represents to the public that perpetual care is provided must create an endowed care fund before selling any burial spaces, it is unclear to us whether this statute applies to previously nonendowed care cemeteries that continue to represent that they provide perpetual care. The rele-

vant portion of appellant's argument is not more than two-thirds of a page long and simply consists of an extended quotation of the statutory language of § 214.310 followed by conclusory statements about the obligations the statute allegedly imposes on BIAV. There is no additional authority or reasoning given for these conclusions.

■ Were the language of the statute unmistakably clear, or were it otherwise clear to us why the appellant believes this section is applicable, we would be much more inclined to address this argument despite its extreme brevity.[2] However, neither the language of the statute nor the appellant's terse suggestion of the meaning of the statute is sufficiently clear to persuade us that the statute requires Sheffield to create an endowed care fund under the statute. It is not within our province to decide arguments that are merely asserted but not developed. *See State v. Hendricks,* 944 S.W.2d 208, (Mo. banc 1997).

■ Appellant suggests that if Sheffield Cemetery is found to be a nonendowed cemetery, it still has the obligation to provide perpetual care and maintenance under its contractual obligations. We agree. Appellant, however, did not plead this case as an action for breach of contract. All claims were brought under the statute. When respondents moved for summary judgment on Counts II and III on the grounds that the statute did not apply to the case, the appellant responded by arguing that the statute was applicable; appellant made no attempt to suggest they were seeking relief under any theory outside the statute. Similarly, in responding to respondents' motion to dismiss, the appellant took the position that Count I was based upon the statute and need not have been pled derivatively. An appellant is bound by the theory presented to the trial court and cannot, on appeal, seek relief under a different theory. *City of St. Peters*

*v. Department of Natural Resources of State of Missouri,* 797 S.W.2d 514, 516 (Mo.App. 1990). Appellant's reliance on *German Evangelical St. Marcus Congregation of St. Louis v. Archambault,* 404 S.W.2d 705 (Mo. 1966) is, therefore, misplaced. *German Evangelical* does not concern any violations of statute, but instead sets forth the right of beneficiaries of a charitable trust to maintain a suit to enforce the trust. *Id.* at 707.

### Derivative Action

Appellant contends that the trial court erred in dismissing Counts I and IV because there was no requirement that this action be brought as a derivative action. It appears that in Count I of the petition, the appellant is asking for an accounting from various defendants of funds and property belonging to the trust and "an order directing that such funds or property be paid over by the defendants to the Sheffield Cemetery Perpetual Maintenance Trust." Appellant's Count I appears to conform to a classic derivative action. Appellant is claiming that the assets of the trust established by BIAV for Sheffield Cemetery were improperly diverted. The injury is to the cemetery. *See Dawson v. Dawson,* 645 S.W.2d 120, 125 (Mo.App. 1982). However, because we agree with the trial court that the statute is inapplicable, we need not address the question of whether the action was required to be brought as a derivative action.

### Second Amended Petition

Appellant also argues that the trial court erred in denying their motion to file a second amended petition. She contends that the trial court ignored allegations based outside of § 214.270 and that the court confused Rule 52.09, applying to derivative actions, with the requirements for Rule 52.08, concerning the submission to the court for find-

---

2. Based on our reading of § 214.310 in its entirety, we believe it is possible the section may require only *new* nonendowed cemeteries purporting to offer perpetual care to create endowed care funds. Although the section includes the adjective "new" only in connection with endowed care cemeteries, the requirement that operators of endowed care and nonendowed care cemeteries representing to offer perpetual care "create" an endowed care fund "before" selling or disposing of "any" burial space is arguably more consistent with the section as a whole being restricted in scope to new cemeteries, regardless of whether their classification as endowed or nonendowed.

ing that the prerequisites for a class action have been met.

 Appellant reminds us that the standard used when allowing plaintiffs to amend a petition are very liberal. Rule 55.33 provides that leave to amend "shall be freely given when justice requires." However, Rule 55.33 does not specify that leave to amend is mandatory. *McLeese v. J.C. Nichols Co.*, 842 S.W.2d 115, 121 (Mo.App.1992). Leave to amend is within the discretion of the trial court, and this court will not overturn the decision made by the trial court absent an abuse of that discretion. *Id.* A party does not have an absolute right to file an amended petition. *May v. Greater Kansas City Dental Soc.*, 863 S.W.2d 941, 947 (Mo.App.1993).

There are several factors for the trial court to consider in making its decision whether to allow an amendment. Among these factors is the record in the case of a plaintiff's earlier attempts to state a claim and whether a plaintiff could cure the deficiencies in the petition by amendment. *Western Cas. & Sur. Co. v. Kansas City Bank & Trust Co.*, 743 S.W.2d 578, 582 (Mo. App.1988). We will not find error in the trial court's denial of leave to amend where the claim asserted has no merit. *Curnutt v. Scott Melvin Transport, Inc.*, 903 S.W.2d 184, 194 (Mo.App.1995).

The appellant's proposed second amended petition did not cure the deficiencies of their first amended petition. The second amended petition was also premised on violations of the endowed care cemetery statutes, and instead was an attempt to plead allegations which would remove any question regarding the standing of plaintiff under the statute. The trial court had already ruled that the statute did not apply to this case. Furthermore, the attempt to state a derivative action lacked the allegations required by Rule 52.09, which provides that "[t]he petition shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action desired from the directors or comparable authority and, if necessary, from the shareholders or members and the reasons for the failure to obtain the action or for not making the effort."

### Conclusion

Sheffield Cemetery never became an "endowed care cemetery" under the Cemetery Endowed Care Fund Law. Because Sheffield's existence and operation predated the Endowed Care Statute, the fact that it has offered "perpetual care" is not sufficient, in itself, to cause Sheffield Cemetery to be bound to comply with the requirements applicable to endowed care cemeteries. The trial court determination that Sheffield Cemetery was not governed by the financial management provisions of the Cemetery Endowed Care Fund Law was not erroneous. The trial court ruling granting summary judgment to the defendants on Counts II and III, and dismissing Counts I and IV, is affirmed.

EDWIN H. SMITH, P.J. and ELLIS, J., concur.