Ferinand **GRAVES** et al., Plaintiffs-Appellees,

v.

George **ROMNEY**, Secretary, Department of Housing and Urban Development, et al., Defendants-Appellants.

Nos. 73–1897, 74–1145.

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1974.

Decided Sept. 3, 1974.

Rehearings and Rehearings En Banc Denied Oct. 2, 1974.

Ronald R. Glancz, Atty., Dept. of Justice, Washington, D. C., for defendants-appellants.

Judith C. Whittaker, Legal Dept., Kansas City, Mo., for plaintiffs-appellees.

Before BRIGHT, STEPHENSON and WEBSTER, Circuit Judges.

BRIGHT, Circuit Judge.

The Secretary of Housing and Urban Development appeals an order of the United States District Court for the Western District of Missouri, filed April 6, 1973, and made final on October 9, 1973, permanently enjoining the Secretary and the United States Department of Housing and Urban Development (HUD) from giving any further financial assistance to the developers of East Hills Village, a federally-subsidized low and moderate income housing project located in Kansas City, Missouri.

Plaintiffs in this case—black and white residents of a racially integrated neighborhood adjoining the project—filed suit in June of 1971, while the project was still in the planning stage, claiming that HUD had violated their civil rights in selecting the East Hills Village site without considering the element of racial concentration. In essence, plaintiffs asserted that the HUD project would serve to tip the balance from an integrated neighborhood into an all-black neighborhood. In their complaint, petitioners alleged that:

Past experience with low-income public and federally subsidized housing indicates that the residents of East Hills Village will be predominantly disadvantaged Negro residents of the City. The undue concentration of persons of a single race or socio-economic group in the neighborhood will result in the transformation of that neighborhood from a comfortable, attractive, integrated, middle-income environment to a segregated neighborhood characterized by urban blight which is at variance with the national housing policy enunciated in the Housing Act of 1949. An increase of racial concentration is prima facie evidence that the affected area will rapidly become a high density, low-income, segregated urban slum. Even the threat of such a radical change in racial, density and income level characteristics will cause a substantial exodus of residents of both races from the neighborhood in anticipation of that change. The present situation in the neighborhood is one of delicate balance and the construction or threat of construction of additional low cost rental housing will irrevocably accelerate the transformation of the neighborhood into a segregated racial and socio-economic community. The ultimate racial concentration will adversely affect the very quality of plaintiffs' and members of their class' daily lives and will cause irreparable and immeasurable injury to their investments in homes and businesses.

After an evidentiary hearing, the district court held that the applicable law was contained in Shannon v. HUD, 436 F.2d 809 (3d Cir. 1970), where the Third Circuit read the Housing Act of 1949, 42 U.S.C. § 1441 et seq., together with the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., and the Civil Rights Act of 1968, 42 U.S.C. § 3601 et seq., to require that HUD "must utilize some institutionalized method whereby, in considering site selection or type selection, it has before it the relevant racial and socio-economic information necessary for compliance with its duties under the 1964 and 1968 Civil Rights Acts." 436 F.2d at 821. Finding that HUD gave no consideration whatsoever to the impact of the East Hills Village project on racial concentration and attendant urban blight and that the impact of the project on the racial balance in the areas proximate to East Hills Village appeared to be a "catastrophe," the district court held that plaintiffs were

entitled to relief under the Civil Rights Act.[1]

On this appeal, the Government does not challenge the findings of civil rights violations. Only the remedy fashioned by the district court—enjoining the Secretary of HUD from rendering further federal financial assistance to the project—is here at issue. In attacking the remedy, HUD emphasizes two points. First, that the injunction prevents the Government from completing its contractual obligations with those who built and financed this project and who are not parties to this action, thereby causing several hundreds of thousands of dollars of loss to these parties. Second, the injunction effectively removes the Government from any further involvement in the project of any kind, thereby eliminating the only agency which could be compelled to oversee the project in a manner which might at least ameliorate the existing racial imbalance. Plaintiffs counter the Government's arguments by asserting that private ownership and control of the project would be in the best interest of the neighborhood. They further state that: "Plaintiffs have no reason to expect better treatment and experiences from HUD than from a private owner of the project and good reason to expect total disregard for their interests."

It appears from the record that the immediate, predictable effect of the district court's injunction has been to prevent the Secretary of HUD from going forward with his commitments under Section 236 of the National Housing Act, 12 U.S.C. § 1715z–1, to give his final endorsement to the deed of trust note for mortgage insurance between East Hills Village, Ltd. (mortgagor) and Housing America Mortgage Co., Inc. (mortgagee), and to continue interest reduction payments amounting to $7,286 per month which represent the differ-ence between an interest rate of one percent and an interest rate of seven percent on the mortgage principal. Consequently, when the injunction went into effect, the mortgage promptly went into default, and the mortgagee claimed mortgage insurance benefits from the Government. Since the district court's injunction ostensibly forbids the Secretary of HUD from settling such a claim, the project is now in limbo awaiting a resolution of this suit.

■■ Our task on this appeal is to determine whether the injunction granted below was, under the circumstances of the case, "tailored to remedy the specific harms shown." Davis v. Romney, 490 F.2d 1360, 1370 (3d Cir. 1974). If the injunction does not directly affect the personal grievances for which plaintiffs sought redress then the cause must be remanded " * * * so that, if possible, an injunction may issue more narrowly drawn to meet the needs of this case." *Id.* Here the fundament of plaintiffs' claim is that HUD's decision to give federal assistance to the East Hills Village project inexorably led to an increase in racial and socio-economic concentration which, plaintiffs claim, inevitably results in urban blight. Yet here the district court injunction was issued after the project was essentially completed, and the complained-of injuries already sustained. If plaintiffs had sought and the district court granted preliminary injunctive relief in June of 1971 when the original complaint was filed and before construction had begun, the usefulness of halting federal financial assistance would have been obvious.[2] But such is not the case.

■■ The goal of equitable relief is not to punish the wrongdoer; it is to restore the plaintiff to the enjoyment of the right which has been interfered with to the fullest extent possible or to pre-

---

1. By the time the district court announced its decision on April 6, 1973, the project was already substantially completed and occupied. At this time, the racial occupancy of the project was over 86 percent black.

2. The district court opinion notes that "[t]he plaintiffs in this case did not seek a temporary injunction because they were in no position to give the substantial bond that would have been required to stop construction."

vent violation of a right before the threatened injury is done or further violation after the injury has been partially effected. The relief provided by the district court in this case cannot achieve either the restorative or preventive functions of equity. First, enjoining federal financial assistance has the effect of virtually eliminating any public control over the project's operation. Second, this belated termination of federal support cannot alter the fact that the racial composition of this neighborhood has already become predominantly black. We must further recognize that the project has been constructed and is already occupied by almost two hundred tenants. Under these circumstances, termination of the governmental financial assistance promised to the owners and the mortgagee is not an appropriate remedy. What is needed are imaginative solutions—aimed at realistically dealing with the problems emanating from HUD's decision. Indeed, the district court in its order of October 9, 1973, denying the federal defendants' motion for a stay of the injunction pending the court's final order, recognized that HUD should play a major role in providing solutions to the problems. The court stated:

> Surely many other uses of the facility, which would not result in driving out white residents and increasing the blight of the ghetto, could be found. The defendants should have the employees, facilities, and know-how to develop such alternative uses.

The district court did not pursue this line of reasoning but instead chose to entirely remove the Government from participation in the project. We think that in doing so the district court failed to tailor a remedy for the specific harms shown, and that the case must be remanded for the drawing of a narrower and more useful remedy.

3. Quoted in appellants' brief at 36–37.

4. *See* Otero v. New York City Housing Authority, 484 F.2d 1122, 1140 (2d Cir. 1973);

Whatever may have caused the " * * * callous indifference of the law by a government bureau," as the district court described HUD's site selection decision, it nevertheless remains true that the executive branch is part of the Government and the judiciary ought not to act on the assumption that a coordinate branch will continue to fail in its essential public duties. The executive branch does indeed, as the district court suggested, have the expertise and facilities, if they are at all available, to develop and supervise the implementation of corrective uses for East Hills Village. On remand, HUD should be given an opportunity to submit a report on alternative relief to remedy the problems flowing from its original, ill-advised project approval. We are advised in the Secretary's brief that on remand in the similar case of Shannon v. HUD, 436 F.2d 809 (3d Cir. 1970), the district court ordered that the remedies to be considered by the agency "shall include, but not be limited to, demolition and reconstruction; renovation and modification * * *; additional construction in the area; construction in adjacent areas; and the revision of the administration of federal site selection regulations." [3]

The Secretary suggests that relief similar to that fashioned by the district court on remand in the *Shannon* case may be appropriate here. While we leave the task of fashioning a proper narrowed decree to the district court on remand, we do take judicial notice of the severe shortage of adequate housing for persons of low and moderate incomes. Certainly the rights of existing tenants should be considered in fashioning an appropriate remedy. In addition, the district court should examine the usefulness and propriety of promoting racial balance in the housing project by the use of affirmative racial controls to govern the entrance of new tenants.[4]

Ackerman, "Integration for Subsidized Housing and the Question of Racial Occupancy Controls," 26 Stanford L.Rev. 245, 262–263, 270 (1974).

**1066**

In summary, on remand the district court should:

1) vacate its permanent injunction;

2) permit HUD to complete permanent financing of this project;

3) retain jurisdiction; and

4) fashion appropriate relief which will minimize the effects of the government's failure to observe its own procedural requirements and which will best assure that this project will ultimately benefit both the tenants and the community.

Remanded for further proceedings consistent with this opinion.