**Allen HARJO et al., Appellants,**

**v.**

**Cecil ANDRUS et al. (two cases).**

**Nos. 77–1122, 77–1706.**

United States Court of Appeals,
District of Columbia Circuit.

Argued May 1, 1978.

Decided June 9, 1978.

Appeals from the United States District Court for the District of Columbia (D.C. Civil 74–189).

John J. Kelly, with whom Marcia J. Wilson, Albuquerque, N. M., was on the brief, for appellants.

Jacques B. Gelin, Atty., Dept. of Justice, Washington, D. C., with whom James W. Moorman, Asst. Atty. Gen., and Edmund B. Clark, Atty., Dept. of Justice, Washington, D. C., was on the brief, for appellees.

Before TAMM and WILKEY, Circuit Judges, and DAVIES,* Senior United States District Judge for the District of North Dakota.

Opinion for the court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

Appellants, citizens of the Creek Nation, brought suit in the United States District Court for the District of Columbia, seeking declaratory and injunctive relief against various officials of the federal government and against the officially recognized Principal Chief of the Creek Nation. The district court (Bryant, J.) granted appellants' motion for summary judgment. On appeal, appellants do not challenge the declaration of their legal rights, but rather the equitable relief fashioned by the district court. We affirm.

I

In January 1974, appellants brought suit against appellees, alleging, in their first cause of action, that appellees were violating the federal treaties and statutes that guarantee self-government to the Creeks.[1] Specifically, they asserted that certain government officials, by recognizing the

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. Appendix (App.) at 11.

Principal Chief as the sole embodiment of Creek government and allowing him to commit and spend tribal funds without the previous consent of the Creek National Council, were acting in violation of the Creek Constitution of 1867, which governed the internal affairs and organization of the Creek tribe.[2] To remedy this alleged abrogation of their constitutional government, appellants sought declaratory and injunctive relief against the government officials and the Principal Chief, and "such other and further relief as the Court may deem just and proper."[3]

In granting appellants' motion for summary judgment on their first cause of action, the district court undertook an extended, studious, and excellent analysis of the effect of federal treaties and statutes on the government of the Creek Nation. It concluded that, although a great deal of legislation had been passed involving the tribe and its government, "the basic legal framework governing the management of Creek tribal affairs, financial and otherwise, is the Creek Constitution of 1867."[4] On the specific issue of the legality of expenditures of tribal funds without approval by the National Council, the court held that "the expenditures of tribal funds which the federal defendants now make and permit to be made under the authority of the Principal Chief may not be legally made without the assent of a Creek national legislature."[5]

Having stated its conclusions on the legal issues, the district court framed equitable relief that it deemed proper to implement those conclusions. Because of its determination that the Creek National Council, as contemplated by the 1867 Constitution, did not still exist, and had not since 1916, the court viewed its task as re-establishing a constitutional Creek government, including a national legislature, without mandating any specific type of institution or organization.[6] To accomplish this purpose, the court ordered a referendum among all Creek adults on certain issues raised by a recently drafted, proposed constitution for the tribe, the most important issue being whether representation in the Creek national legislature should be by tribal town, as provided in the 1867 Constitution, or by geographic district, as proposed in the draft constitution.[7] The court further ordered the results

2. *Id.* at 20–26. Appellants attached to their complaint a copy of the 1867 Constitution of the Muskogee Nation. It provides for a legislative branch, called the National Council, composed of a House of Kings and a House of Warriors, both with memberships elected from the tribal towns; an executive branch, headed by a Principal Chief and Second Chief; and a judicial branch, consisting of a High Court. Article V specifically provides that "[n]o moneys shall be drawn from the National Treasury, except to carry out appropriations made by the National Council . . . ." *See id.* at 38–40.

3. *Id.* at 36–37.

4. *Harjo v. Kleppe,* 420 F.Supp. 1110, 1143 (D.D.C.1976).

5. *Id.* at 1143–44.

6. *Id.* at 1144.

7. *Id.* at 1144, 1146–47. There are three basic issues on which the draft constitution differs substantially from the 1867 Constitution: first, whether the legislative body of the Creek Nation should be bicameral or unicameral; second, whether the office of Second Chief should be continued; and third, whether representation in the National Council should be based on tribal towns or geographic districts.

The outcome of the referendum on the third issue, the basis of representation, could have a profound effect on the traditional political organization of the Creek Nation. The Creek Nation, historically and traditionally, is actually a confederacy of autonomous tribal towns, or *talwa,* each with its own political organization and leadership. Membership in a town is a matter of birthright rather than residence, each Creek being, by birth, a member of his mother's town, or, if his mother is non-Indian, a member of his father's town. Originally, there were four "mother" towns, but the number was expanded by a transfer of town fires, until, by the time of the adoption of the 1867 Constitution, there were approximately forty-four *talwa* in existence. Tribal towns can also merge or dissolve, and there is at present some doubt as to the exact number of towns that are politically and socially active. *See* App. at 164. However, since membership is hereditary and towns may adopt new members, no Creek can ever actually be considered to be without tribal town affiliation, or the possibility of such affiliation. *See* Opler, *The Creek Indian Towns of Oklahoma in 1937,* in 13 Papers in Anthropology 12–16, 21–23, 34–35, 60–65 (H. Ottaway ed. 1972).

of the referendum to be incorporated into a new constitution for the Creek Nation by a commission composed of two tribal members chosen by appellants, two tribal members chosen by the Principal Chief, and one tribal member or non-tribal member appointed by unanimous choice of the original four.[8] By such a process, the district court reasoned, democratic self-government could be restored to the Creek Nation with maximum participation by tribal members and minimum intrusion by the court.[9]

Appellants do not now challenge the district court's legal conclusions as to their continuing right to constitutional self-government or as to the requirement of Creek legislative approval of the expenditure of tribal funds. They do, however, challenge the equitable relief granted, insofar as it fails to require the re-constitution and re-convention of the Creek National Council as originally established under the 1867 Constitution—that is, with representation by tribal town. Having reviewed the record in this case, we affirm both the original order of the district court and its subsequent order denying appellants' motion to modify the judgment.[10]

## II

■ When called upon to review equitable relief fashioned by a district court, our task is to determine whether the district court abused its discretion in ordering the challenged remedy—that is, whether it failed to tailor the relief to redress the harms demonstrated. *Graves v. Romney,* 502 F.2d 1062, 1064 (8th Cir. 1974), *cert. denied,* 420 U.S. 963, 95 S.Ct. 1354, 43

L.Ed.2d 440 (1975); *see Aviation Consumer Action Project v. Washburn,* 175 U.S.App. D.C. 273, 280, 535 F.2d 101, 108 (1976). In performing this task, we must be mindful of the principle that a district court's equitable discretion is characterized by flexibility, the need for practicality, and the duty to reconcile the public interest with private needs. *Hecht Co. v. Bowles,* 321 U.S. 321, 329–30, 64 S.Ct. 587, 88 L.Ed. 754 (1944); *accord, Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 15, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). As stated by this court in *Blair v. Freeman,* 125 U.S.App. D.C. 207, 217, 370 F.2d 229, 239 (1966), "[a] court of equity may tailor its relief with a critical and balanced view of the ramifications of its decision, including in the overall public interest a consideration of the interests of those not before the court."

■ Appellants' first contention is that the district court, in fashioning injunctive relief on the motion for summary judgment, impermissibly resolved a genuine issue of material fact.[11] The contention is based on the district court's statements to the effect that the Creek National Council, as provided for in the 1867 Constitution, was not still in existence, and could not feasibly be convened immediately.[12] These statements, however, do not purport to resolve any factual disputes. It was never questioned by the parties that the Creek National Council per se has not met in more than sixty years.[13] Moreover, in appellants' motion for preliminary injunction, they requested the court to establish a receivership for tribal funds until a plan could be devised for re-establishing a National Council,

8. 420 F.Supp. at 1146–47.

9. *Id.* at 1147.

10. App. at 269.

11. Brief of Appellants at 14–32.

12. 420 F.Supp. at 1144, 1146. Although the district court did use the term "irremediably unavailable" to describe the present status of the Creek National Council, the form of relief it granted to appellants did not preclude the re-establishment of the National Council with representation based on town membership. We

thus do not believe that the district court, by using the term, was attempting to make any determination concerning the continuing existence of tribal towns, or the possibility of creation of a national legislature identical to that provided for in the 1867 Constitution.

13. *See* App. at 5, 57, 61, 65. The district court's finding of fact on the last known meeting of the Creek National Council was entered in August 1974, and appellants' and appellees' motions for summary judgment, conceding that there were no genuine issues of material fact, were not entered until early 1975.

thus indicating that the Council was not, at that time, a workable or convenable body.[14]

Appellants further maintain that the mandate of a referendum and the establishment of a constitutional commission are inconsistent with the district court's declaration that the 1867 Constitution remains the basic legal framework for Creek tribal government.[15] Appellants' argument, however, overlooks the very essence of the district court's opinion—that the Creek people are entitled to democratic self-government. The court neither directly nor indirectly abolished the essential tripartite government embodied in the 1867 Constitution, but rather left it to the Creek people either to revivify that system along traditional, tribal town lines, or to choose a different means of representation.[16] Thus, the court designed its relief to take into account the needs and desires of *all* those who would be most affected by its decision—the entire Creek nation. *See Eccles v. Peoples Bank,* 333 U.S. 426, 431, 68 S.Ct. 641, 92 L.Ed. 784 (1948). Keeping in mind the broad discretion of the district court in framing equitable relief, and reviewing the record's account of the prolonged denial to the Creek people of the opportunity to express their views on the form and functioning of their government, we find no abuse of discretion in the district court's order in this case.

Appellants' final contention is that the district court erred in denying their motion to modify the judgment.[17] Under Rule 60(b)(6) of the Federal Rules of

Civil Procedure, a district court may modify or vacate a final judgment for "any . . . reason justifying relief from the operation of the judgment." A motion under Rule 60(b)(6) is addressed to the sound discretion of the district court, and, thus, our duty in reviewing the court's denial is to determine whether it abused that discretion. *See Bridoux v. Eastern Air Lines, Inc.,* 93 U.S.App. D.C. 369, 371–72, 214 F.2d 207, 209–10, *cert. denied,* 348 U.S. 821, 75 S.Ct. 33, 99 L.Ed. 647 (1954).

The primary requirement of Rule 60(b)(6) is that there be justification for relief from the judgment. *See* 7 Moore's Federal Practice § 60.27[1], at 343 (2d ed. 1975). In their motion, appellants contended that a modification to provide for re-establishment of tribal towns and convention of the Creek National Council would be more consistent with the court's opinion and would better serve the interests of justice, without necessitating court intrusion into Creek internal affairs, than the relief provided.[18] As stated earlier, we do not find the district court's remedy inconsistent with its declaration of the Creeks' rights. The primary purpose of both the declaratory judgment and the injunctive relief was to ensure democratic self-government to the Creek people by permitting them *all* to participate in the choice of the type of government to be established to manage tribal activities and funds. Furthermore, the district court has not intruded upon internal affairs by mandating a referendum; indeed, it expressly declined to give any view on the form of govern-

---

14. *See id.* at 45–46.

15. Brief of Appellants at 33–42.

16. The district court summarized the basis of the relief granted as follows:

   [I]t would be highly anomalous in a case in which the underlying claim is one of self-determination for the Court to vindicate that right by simply mandating the creation of some particular sort of institution or government. It follows then that the re-creation of the constitutional Creek government should be accomplished by the Creeks themselves. 420 F.Supp. at 1144.

17. Brief of Appellants at 43–45. Although appellants address their argument on appeal only to subsection (6) of Rule 60(b) of the Federal Rules of Civil Procedure, their original motion in the district court also encompassed subsection (1), relating to mistake or inadvertence, and subsection (2), relating to newly discovered evidence. *See* Record Entry 52 (Memorandum at 2); Record Entry 54 at 2. We agree with the district court that relief from the judgment in this case was not adequately justified under either of these subsections, or under subsection (6).

18. App. at 142.

ment or representation for which the Creeks should vote.[19]

In further support of its Rule 60(b) motion, appellants offered various affidavits and minutes of town meetings, showing the continuing vitality of certain tribal towns and their efforts toward political organization. These documents, however, do not contradict, but rather buttress, the district court's original conclusion that the Creek National Council, with representation based on town membership, was not an existing, organized body.[20] Moreover, if, as the documents indicate, there are Creeks who wish to continue the traditional organization of the national legislature, the relief fashioned by the district court provides them with the opportunity to express that desire. We therefore do not believe that the district court abused its discretion in finding that appellants had not justified relief from the judgment.

### III

■ The power of a district court to shape equitable relief is broad and flexible, and is to be exercised only after full consideration of the interests of all those who will be affected by it. In this case, the district court found that the Creeks' right to self-government had been violated. It then framed its relief to redress that harm by allowing the Creeks to re-establish a constitutional government according to their own desires. We do not believe that the district court abused its discretion either in its order granting declaratory and injunctive relief, or in its order denying appellants' motion to modify the judgment.

*Affirmed.*

19. As the district court stated with regard to the referendum, "[i]t is not properly the role of the Court to express any view as to the merits of this proposed constitution or of the changes it would make in the legal structure of Creek national government; that is a matter for determination by the Creeks themselves." 420 F.Supp. at 1144.

20. For instance, in his affidavit supporting the motion for modification of judgment, appellant Harjo states that he is uncertain as to the exact

number of tribal towns which are now active, or which would become active if the National Council were convened. App. at 164; *see id.* at 144, 162. Although demonstrating the growing political awareness among the Creeks, such affidavits also show the essential fairness of the district court's equitable relief, which permits *all* the Creek people to participate in the fashioning of a constitutional government. *See* note 19 *supra* and accompanying text.