**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 3, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

| | |
|---|---|
| THLOPTHLOCCO TRIBAL TOWN, a federally-recognized Indian Tribe, | |
| Plaintiff - Appellant, | |
| v. | No. 13-5006 |
| GREGORY R. STIDHAM, Judge of the District Court of the Muscogee (Creek) Nation; RICHARD LERBLANCE, Chief Justice of the Muscogee (Creek) Nation Supreme Court; ANDREW ADAMS, III, Vice-Chief Justice of the Muscogee (Creek) Nation; GREGORY BIGLER, Judge of the District Court of the Muscogee (Creek) Nation, | |
| Defendants - Appellees. | |

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. NO. 4:09-CV-00527-JHP-FHM)**

---

Michael Salem, Salem Law Offices, Norman Oklahoma, for Appellant.

W. William Rice, G. William Rice, P,C., Cushing, Oklahoma, for Appellees.

Before **TYMKOVICH**, **HOLMES**, and **BACHARACH**, Circuit Judges.

**TYMKOVICH**, Circuit Judge.

The Thlopthlocco Tribal Town is a federally recognized Indian tribe in Oklahoma. An election dispute arose about which individuals were properly elected or appointed to govern the Thlopthlocco people. Seeking to resolve that dispute, the Tribal Town filed suit in the tribal court of the Muscogee (Creek) Nation and, accordingly, voluntarily submitted to that court's jurisdiction.

The Tribal Town subsequently concluded it did not want to maintain its suit in tribal court and dismissed its claims. But the defendant in that suit had, by that time, filed cross-claims. Arguing that the Tribal Town's sovereign immunity waiver did not cover proceedings on the cross-claims, the Tribal Town attempted to escape Muscogee court jurisdiction, but, in various decisions, several judges and justices of the Muscogee courts held that they may exercise jurisdiction over the Tribal Town without its consent.

The Tribal Town then filed a federal action in the Northern District of Oklahoma against those Muscogee judicial officers, seeking to enjoin the Muscogee courts' exercise of jurisdiction. The district court dismissed the case,

finding that the federal courts lacked subject matter jurisdiction, the defendants were entitled to sovereign immunity, the Tribal Town had failed to join indispensable parties, and the Tribal Town had failed to exhaust its remedies in tribal court. We conclude, however, that the Tribal Town has presented a federal question and that the other claims do not require dismissal. But we agree the Tribal Town should exhaust its remedies in tribal court while its federal court action is abated.

Exercising jurisdiction under 28 U.S.C. § 1331, we AFFIRM in part and REVERSE in part the decision of the district court and remand for further proceedings.

# I. Background

Before turning to the legal issues, a brief consideration of the Tribal Town's origins and history is helpful.

## A. Tribal History

The Thlopthlocco Tribal Town is a town of Creek Indians who originate from Mexico but, in the 1500s, migrated to what is now Georgia and Alabama, where they resided until forcibly relocated in the 1820s and 1830s. For a more detailed account of the relocation, see Grant Foreman, The Emigration of the Five Civilized Tribes of Indians (1932). *See also* Angie Debo, The Road to Disappearance: A History of the Creek Indians (1979).

The Creeks have historically governed themselves through a confederacy of geographic units called tribal towns. "The Creek Nation, historically and traditionally, is actually a confederacy of autonomous tribal towns, or Talwa, each with its own political organization and leadership." *Harjo v. Andrus*, 581 F.2d 949, 952 at n.7 (D.C. Cir. 1978). The members of a talwa generally lived together, but membership was determined by ancestry rather than geography; a child became a member of his or her mother's talwa.

The term "talwa" "was generally translated into the English word 'town,' but rather covers the conception contained in the word 'tribe.'" Frederic Kirgis, Memorandum to the Commissioner of Indian Affairs 1 (July 15, 1937). As one analysis puts it, "[t]he Creeks had a peculiar form of government in that the confederation seemed to have no central control. The population of a town, regardless of the number of clans represented, made up a tribe ruled by an elected chief or 'miko,' who was advised by the council of the town on all important matters." Ohland Morton, Early History of the Creek Indians, 9 Chronicles of Okla. 17, 20 (March 1931). Thus, "[t]he Creek town . . . represented an autonomy such as is usually implied by the term 'tribe.'" *Id.* at 21; *see also Harjo*, 581 F.2d at 952 n.7 (D.C. Cir. 1978) (discussing the historic role of autonomous talwa). Though autonomous, the many talwa were closely affiliated throughout most of the Creeks' history, giving rise to references to the "Creek Confederacy" or the "Muscogee Nation," named for the talwa's shared language.

Shortly after the Creeks' arrival in Oklahoma in the 1820s and 1830s, the Creek talwa came together to take several unified actions. First, they jointly entered into several treaties with the United States; during these treaty discussions, the United States interacted with chiefs or commissioners, who represented the Creeks at large rather than individual talwa. And, in 1860, the Creeks came together to adopt a single constitution.

This apparent unification was driven, at least in part, by the United States government:

> [T]he Federal authorities found it advisable to insist upon centralization of the Creeks to avoid dealing with each Talwa. The Indians opposed this centralization and it was not until after the [American] Civil War, in which the towns took opposing positions, that the Federal Government achieved the formation of a single government among the Creek Indians. And, even then, the union was opposed by the full-blood element.

Kirgis at 2.

In 1867, the Creeks revised their constitution and created a centralized government that, to some extent, mirrored the United States' federal structure. For instance, the constitution provided that each of the then 44 talwa were entitled to one representative in each house of the National Council, the centralized government's legislative branch. But, largely because the centralized government had little power, the talwa continued to govern themselves, behaving

-5-

more like states than municipalities.  Despite several efforts to challenge it, the 1867 constitution remained the Creeks' governing document until, in conjunction with the Curtis Act's and the Dawes Allotment Act's attempt to assimilate the tribes, the United States abolished the tribal governments and incorporated the Creek citizens and territory into the new state of Oklahoma in 1907.

After 1907, the talwa were essentially governed by their respective counties and the state of Oklahoma until Congress enacted the Oklahoma Indian Welfare Act (OIWA) in 1936.  The OIWA invited any "recognized tribe or band of Indians residing in Oklahoma" to adopt a constitution and bylaws and accordingly be acknowledged by a federal charter of incorporation.  25 U.S.C. § 503.  Although 16 talwa were still active at that time, only the Thlopthlocco Tribal Town and two other Creek talwa, the Kailegee Tribal Town and the Alabama-Quassarte Tribal Town, sought and received federal charters in the years immediately after OIWA's enactment.  *See Hobia*, 2012 WL 2995044 at *7.

The Thlopthlocco Tribal Town created its constitution and received its federal charter of incorporation in 1939, rendering it a federally recognized tribe. During the recognition process, the government investigated the relationship of the Tribal Town to the larger network of Creek Indians, explaining, "these towns retain sufficient characteristics of a band to identify them as Indian bands."[1]

---

[1] *See Montoya v. United States*, 180 U.S. 261, 266 (1901) ("By a 'tribe' we
(continued...)

Kirgis at 2. Further, "[t]hat the Indians themselves recognized the existence of the Creek tribal towns is clear from an examination of the constitutions and laws of the Muscogee Nation. . . . The towns are recognized as having an existence not derived from the constitution of the Muscogee Nation but in fact antedating and continuing alongside the constitution." *Id.* at 4.

It was not until 1979 that the Muscogee Nation became a "tribe or band" of Creek Indians recognized under OIWA. In conjunction with its application for a federal charter, the Muscogee Nation adopted its current constitution. Although the Muscogee constitution does not mention the Thlopthlocco, it provides that it "shall not in any way abolish the rights and privileges of persons of the Muscogee Nation to organize tribal towns." App. 1197.

Today, the governing structures of the Thlopthlocco Tribal Town and the Muscogee Nation overlap in some respects. The Tribal Town invites the descendant of any Thlopthlocco Indian to join, and the Muscogee Nation invites

[1](...continued)
understand a body of Indians of the same or a similar race, united in a community under one leadership or government, and inhabiting a particular though sometimes ill-defined territory; by a 'band,' a company of Indians not necessarily, though often, of the same race or tribe, but united under the same leadership in a common design."); *see also Tully v. United States*, 32 Ct. Cl. 1, 7 (1896) ("The policy of the United States in dealing with the Indians has been, as we understand, to accept the subdivisions of the Indians into such tribes or bands as the Indians themselves adopted, and to treat with them accordingly.").

the descendants of any Creek Indian to join; thus, all of the Tribal Town's members seem to be eligible for Muscogee Nation membership. In practice, most but not all of the Tribal Town's memberships are also members of the Muscogee Nation. Further, while the Tribal Town has its own constitution and governing structure, it does not have its own courts. Although the Tribal Town's federal recognition empowers it to create its own judiciary, H.R. Rep. No. 103-781, at 3, it has struggled to find the necessary federal funding. The Bureau of Indian Affairs gives federal funding earmarked for judicial services for the Thlopthlocco people to the Muscogee courts.

The Thlopthlocco Constitution vests the power to govern the Tribal Town in a ten-member Business Committee, which is composed of five elected town officers—the Town King, two Warriors, a Secretary, and a Treasurer—and five advisors appointed by the elected officials. The Tribal Town holds elections every four years, but, if an elected position is vacated between elections, the remaining elected officials are empowered to fill the vacancy. Business Committee members may also be removed from office by a majority vote of Tribal Town members.

From this historical background, several points are worth noting. First, the Tribal Town and the Muscogee Nation are both federally recognized Indian tribes. Second, the governing structures of both overlap and intersect, reflecting the

historical confederate nature of the Creeks. Finally, the Tribal Town is without a judiciary, but the BIA's funding stream implies that the Tribal Town members use, or at least can use, the Muscogee courts.

We turn next to the procedural background of this appeal before addressing the legal issues.

### B.  *Procedural Background*

This dispute arises from a battle over the composition of the Business Committee. According to the complaint, Nathan Anderson, the Thlopthlocco's elected Town King, attempted to overthrow the Business Committee in 2007 and declare himself the only legitimately elected Tribal Town official. The Tribal Town filed an action in Muscogee tribal court against Anderson for declaratory and injunctive relief (*Thlopthlocco Tribal Town v. Anderson* (*Anderson I* )). As a part of its filing in the Muscogee court, the Tribal Town issued a narrow waiver of sovereign immunity to allow the case to proceed.[2] The Muscogee district court held that it lacked jurisdiction to hear the Tribal Town's claim and urged the

---

[2]  The Tribal Town has waived sovereign immunity in other suits. *See Tomah*, 8 Okla. Trib. 451 (holding, in the first suit where the Tribal Town sought Muscogee court jurisdiction, that the Muscogee courts had jurisdiction over the Tribal Town because, when the Tribal Town applied for federal recognition, it had characterized itself as a town of Creek Indians); *see also Thlopthlocco Tribal Town v. Tomah*, 8 Okla. Trib. 576 (Mus. (Cr.) D. Ct. 2004) ("It is beyond the Court's jurisdiction to hear [counterclaims against the Tribal Town] unless the Tribal Town specifically and expressly waives sovereign immunity for such claims to be heard in the courts of the Muscogee (Creek) Nation.").

Town to "resolve its own problems." App. 62. But the Muscogee Supreme Court reversed, finding that, although the Tribal Town is a separately recognized Indian tribe under federal law, it is a Muscogee Nation town under tribal law and therefore subject to jurisdiction in Muscogee courts.

The *Anderson I* defendants then filed cross-claims against the remaining nine members of the Business Committee, most of whom are also members of Muscogee Nation. These cross-claims alleged the Business Committee members had violated the Thlopthlocco Constitution by, among other things, attempting to strip Anderson of his authority as Town King. According to the Tribal Town, the parties then "internally resolved the issue [the Tribal Town had presented in *Anderson I*] by Anderson's removal from office under the Thlopthlocco Constitution." Aplt. Br. at 7.

But Anderson continued to pursue his cross-claims. As a result, the Tribal Town withdrew its waiver of sovereign immunity and moved to dismiss the suit. The Muscogee district court denied that motion, finding that, even in the absence of the Tribal Town's consent, the Muscogee courts had jurisdiction to hear the suit for the same reasons the Muscogee Supreme Court articulated in the earlier appeal. The Tribal Town filed an interlocutory appeal. Citing its previous finding that, under tribal law, the Tribal Town was part of the Muscogee Nation, the Muscogee Supreme Court denied the appeal.

In January 2011, the Thlopthlocco people were scheduled to elect a new Business Committee. Shortly before the election, Anderson filed a new action in Muscogee district court, alleging that individual Business Committee members and members of the Thlopthlocco Election Committee illegally removed him and other candidates from the ballot (*Anderson v. Burden* (*Anderson II*)). The Muscogee district court denied the Committee members' motion to dismiss for lack of jurisdiction and suspended the election. Subsequently, the Muscogee district court ordered that the Tribal Town hold an election and include Anderson and the other *Anderson II* plaintiffs on the ballot.

With these developments, the Tribal Town filed suit in the Northern District of Oklahoma. It requested that the federal court enjoin the Muscogee judicial officers from asserting jurisdiction over the Tribal Town's election procedures. The district court denied the request and instead granted the Muscogee judicial officers' motion to dismiss the suit because: the federal court lacked subject matter jurisdiction; the Muscogee judicial officers were entitled to sovereign immunity; the Tribal Town had failed to join indispensable parties; and the Tribal Town had not exhausted its tribal court remedies.

## II. Analysis

The Tribal Town argues that the district court wrongly dismissed the suit because the extent of a tribal court's jurisdiction over nonmembers presents a

-11-

federal question. The Tribal Town further contends the district court improvidently found that the Muscogee judicial officers are entitled to sovereign immunity, that the Tribal Town failed to join necessary parties to its federal suit, and that the Tribal Town should be required to exhaust its tribal court remedies before proceeding. The Tribal Town also asks that, if we reverse the district court's dismissal of this suit, we consider whether the Tribal Town is entitled to a preliminary injunction.

We review each issue in turn.

## A. Subject Matter Jurisdiction

The district court held that it lacked subject matter jurisdiction. It based this conclusion on its finding that the Tribal Town was not independent of the Muscogee Nation and therefore the election-related claims amounted to an intratribal dispute. A "federal court has no jurisdiction over an intratribal dispute." *Kaw Nation ex rel. McCauley v. Lujan*, 378 F.3d 1139, 1143 (10th Cir. 2004).

But both the Tribal Town and Muscogee judicial officers recognize that, at least for the purposes of our jurisdictional inquiry, the Tribal Town and Muscogee

Nation are separate tribes.[3] We agree, and both history and case law confirm this understanding.

First, in 1937, when the United States Department of the Interior issued a charter formalizing the Tribal Town's status as a recognized tribe, the Department expressly resolved that the Thlopthlocco's relationship with the Muscogee did not impede the Tribal Town's recognition as a discrete entity. The Tribal Town's federal charter is strong evidence of its independence from the Muscogee Nation and of its quasi-sovereign status. *See* Cohen's Handbook of Federal Indian Law 134 (2012) (discussing the legal significance of federal recognition of an Indian tribe). Under federal law, the Tribal Town is therefore a freestanding tribe.

Second, our cases recognize the legal separation of the Tribal Town and the Muscogee Nation. "While the Creek Nation has jurisdiction to regulate its own citizens, the Thlopthlocco is an independent tribal entity that elects its own government pursuant to its own Constitution and is not itself a citizen of the Creek Nation." *Crowe & Dunlevy P.C. v. Stidham*, 640 F.3d 1140, 1152 (10th Cir. 2011); *see also State ex rel. Oklahoma Tax Comm'n v. Thlopthlocco Tribal Town of Oklahoma*, 839 P.2d 180, 183 (Okla. 1992) (recognizing that the Tribal

---

[3] At oral argument, counsel for the Muscogee judicial officers confirmed this position. Oral argument recording at 18:16–19:40 (categorizing the Tribal Town as a "separate tribe" and this suit as an intertribal dispute).

Town, as a tribe or band incorporated under OIWA, is entitled to sovereign immunity).

Having concluded the Tribal Town and the Muscogee Nation are separate tribes, we turn to whether a tribal court's exercise of jurisdiction over another tribe presents a federal question. The Supreme Court has repeatedly held that whether a tribal court has exceeded its jurisdictional authority is a question of federal common law. As the Court explained in *National Farmers Union Insurance Companies v. Crow Tribe of Indians*, "whether an Indian tribe retains the power to compel a non-Indian . . . to submit to the civil jurisdiction of a tribal court is one that must be answered by reference to federal law and is a 'federal question' under § 1331." 471 U.S. 845, 852 (1985).

Thus, while *National Farmers* refers to "non-Indians," the logic of the opinion applies to non-members of a tribe, including other independent Indian tribes. "The inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe"—with two exceptions: the activities of nonmembers who enter into consensual relationships with the tribe and the activities of nonmembers that take place on Indian land. *See Montana v. United States*, 450 U.S. 544, 565 (1981).[4] Consequently, the question of whether a tribal

---

[4] Although *Montana* addressed a tribe's regulatory authority rather than its adjudicative authority, *Montana* is applicable here because the Supreme Court has

(continued...)

court has jurisdiction over a nonmember is decided under federal common law as set out in *Montana*. *See, e.g.*, *Attorney's Process & Investigation Servs., Inc. v. Sac & Fox Tribe of Miss. in Iowa*, 609 F.3d 927, 935 (8th Cir. 2010); *Philip Morris USA, Inc. v. King Mountain Tobacco Co.*, 569 F.3d 932, 938 (9th Cir. 2009); *MacArthur v. San Juan Cnty.*, 309 F.3d 1216, 1222 (10th Cir. 2002); *see also Nevada v. Hicks*, 533 U.S. 353, 360, 367 (2001) (holding that tribal courts are not courts of general jurisdiction because their inherent adjudicative jurisdiction over nonmembers is limited by federal law and noting that the Court has "never upheld under *Montana* the extension of tribal civil authority over nonmembers on non-Indian land"). As a result, we have not limited our federal question jurisdiction to jurisdictional disputes between tribes and non-Indians; we have more generally held that "[t]he scope of a tribal court's jurisdiction is a federal question over which federal district courts have jurisdiction." *Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1501 (10th Cir. 1997) (citing *National Farmers*, 471 U.S. at 853).

What is more, the most basic principle of federal question jurisdiction is that the federal courts have the authority to consider the nature and effect of

---

[4](...continued)
held, "[a]s to nonmembers, we hold, a tribe's adjudicative jurisdiction does not exceed its legislative jurisdiction. Absent congressional direction enlarging tribal-court jurisdiction, we adhere to that understanding." *Strate v. A-1 Contractors*, 520 U.S. 438, 453 (1997).

-15-

rights created by federal law. *See Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936). In this context, we see no reason to distinguish between rights created by federal law and inherent rights recognized by federal law. The federal government has recognized the Tribal Town as a sovereign tribe and, accordingly, the government has recognized the rights that accompany the Tribal Town's sovereignty. The Tribal Town now alleges that the Muscogee courts are attempting to trample on those federally recognized rights. The Tribal Town properly looks to the federal court to consider its claim under federal question jurisdiction.

In short, the Tribal Town has sufficiently pleaded that it is a separate and independent Indian tribe beyond the reach of Muscogee court jurisdiction. That allegation presents an Article III federal question. The district court therefore erred in prematurely dismissing the Tribal Town's claims for lack of subject matter jurisdiction.

Since we conclude the district court had jurisdiction, we go on to consider its other grounds for dismissal.

### B.  Sovereign Immunity

The district court also determined the Muscogee judicial officers were entitled to sovereign immunity. We disagree, concluding that our decision in

*Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140 (10th Cir. 2011), answers the question.

*Crowe* was an outgrowth of an earlier aspect of this election controversy. Shortly after Anderson filed his cross-claims in *Anderson I,* he also filed a motion arguing he should have access to the Tribal Town's treasury to pay his attorneys. He argued that the heart of the dispute before the tribal court was whether he or the Business Committee was properly authorized to govern the Tribal Town and that, until that question had been answered, the Business Committee should not be allowed to pay its legal bills from the town coffers unless he was able to do so as well. The Muscogee Supreme Court eventually prevented both Anderson and the Tribal Town from paying their litigation costs from the Tribal Town's treasury. The Tribal Town requested rehearing, arguing that the Muscogee Supreme Court had exceeded the limited waiver of sovereign immunity, but the Muscogee Supreme Court denied the request. Judge Stidham, a defendant in this case, accordingly issued an order effectuating the Muscogee Supreme Court's decision and ordering Crowe & Dunlevy, the Tribal Town's counsel, to return to the Tribal Town's treasury all fees paid from the treasury to date.

Crowe & Dunlevy filed suit in the Northern District of Oklahoma to enjoin Judge Stidham's order. Judge Stidham filed a motion to dismiss the suit, arguing he was entitled to sovereign immunity as a member of the Muscogee judiciary,

which the district court denied. On appeal, we identified that the relief sought against Judge Stidham involved only prospective relief and "the alleged unlawful exercise of tribal court jurisdiction in violation of federal common law is an ongoing violation of federal law sufficient to sustain the application of the *Ex parte Young* doctrine." *Crowe*, 640 F.3d at 1156 (internal quotation marks omitted) (applying the holding of *Ex parte Young*, 209 U.S. 123 (1908), that, under certain circumstances, an action against a state official should not be treated as an action against the state and, as a result, is not subject to the doctrine of sovereign immunity). Therefore, we held that a plaintiff seeking injunctive relief from the Muscogee courts' allegedly unlawful exercise of jurisdiction over a nonmember is entitled to sue the judge in federal court.

The same logic applies here. The Tribal Town, a nonmember of the Muscogee Nation, has sued Muscogee judges seeking prospective relief from the Muscogee courts' allegedly unlawful exercise of jurisdiction. The Muscogee judicial officers are in the same position Judge Stidham was in *Crowe*, and, accordingly, they are not entitled to sovereign immunity.

### C. Necessary Parties

The district court also based its dismissal on the Tribal Town's failure to join necessary or indispensable parties under Federal Rule of Civil Procedure 19.

Under Federal Rule of Civil Procedure 19(a), the court must order joinder of a party if (1) in that person's absence, the court cannot accord complete relief among existing parties; or (2) failure to join would jeopardize a person's ability to protect himself or expose him to inconsistent adjudications. If joinder is infeasible for some reason, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).

The district court concluded that the Muscogee Nation was an indispensable party "because a ruling by this Court as to the [Muscogee Nation]'s jurisdiction could potentially affect future efforts of other branches of the [Muscogee Nation] to exercise jurisdiction over Thlopthlocco, or other Creek tribal towns." *Thlopthlocco Tribal Town v. Stidham*, 2013 WL 65234 *11 (N.D. Okla. Jan. 3, 2013). And because the Muscogee Nation was entitled to sovereign immunity, the district court determined it could not be joined and thus the action must be dismissed.

But the district court's reasoning conflicts with the purpose of the *Ex parte Young* doctrine. As we have already explained, the Tribal Town seeks prospective relief in the form of an order directing Muscogee judges to decline to exercise jurisdiction over the Tribal Town. Under *Crowe*, the plaintiffs are

-19-

entitled to that relief if they show the circumstances warrant an injunction preventing future violations of federal law.

A similar situation presented itself in a case involving the Cherokee Nation in the District of Columbia Circuit. In that case, *Vann v. U.S. Dep't of Interior*, 701 F.3d 927 (D.C. Cir. 2012), the court held that Rule 19 poses no obstacle when a plaintiff has sued a tribal officer instead of the tribe itself because a claim against the tribe's officer in his official capacity was "one and the same in an *Ex parte Young* suit for declaratory and injunctive relief." *Id.* at 929. In that posture, "the Principal Chief can adequately represent the Cherokee Nation in this suit, meaning that the Cherokee Nation itself is not a required party for purposes of Rule 19." *Id.* at 929–30. Otherwise, "official-action suits against government officials would have to be routinely dismissed, at least absent some statutory exception to Rule 19, because the government entity in question would be a required party yet would be immune from suit and so could not be joined. But that is not how the *Ex parte Young* doctrine and Rule 19 case law has developed." *Id.* at 930.

For the same reasons, the action here against the Muscogee judicial officers can go forward without involving the Muscogee Nation as a party to the suit.

The district court also determined that some of the other parties in the *Anderson I* and *Anderson II* litigation are necessary parties because "Thlopthlocco

is actually seeking relief in this case which would terminate *Anderson I* and *II*, depriving the [parties] of their 'day' in court." *Thlopthlocco*, 2013 WL 65234 at *11. But failure to join a necessary party is not grounds for dismissing the case. Before taking that step, the court must determine whether joining the necessary parties is feasible, and, only if it is not, whether Rule 19(b) requires the court to dismiss the suit in their absence. *See Symes v. Harris*, 472 F.3d 754, 760–61 (10th Cir. 2006) ("Fed. R. Civ. P. 19(b) forbids dismissal if the necessary party could be made a party."). The district court did not consider the feasibility of joining the *Anderson I* defendants and the *Anderson II* plaintiffs and should do so on remand.

### D. Tribal Court Exhaustion

The district court dismissed the Tribal Town's complaint because it had not yet exhausted its claims in tribal court. In particular, the district court determined the Muscogee court had not reached a final decision about whether it could properly exercise jurisdiction over the Tribal Town after the Tribal Town had withdrawn its waiver of sovereign immunity.

The Tribal Town argues that the district court erred and we should resolve the jurisdictional issue at this time because either (1) the issue has been fully litigated in tribal court or (2) the Tribal Town should be excepted from the exhaustion rule.

-21-

We agree with the district court, however, that the Tribal Town has yet to exhaust its tribal court remedies.  Further, we find that the exhaustion rule applies, and the federal courts may benefit from the tribal court's analysis and final resolution of the Tribal Town's jurisdictional arguments.  We therefore affirm the district court's application of the tribal exhaustion rule and decline to address, at this stage of the litigation, the question of whether the Muscogee court may exercise jurisdiction despite the Tribal Town's withdrawal of its immunity waiver.  But instead of dismissing the complaint, we instruct the district court, as explained below, to abate its proceedings until the Tribal Town has exhausted its claims in tribal court.

### 1. Tribal Exhaustion Rule

The tribal exhaustion rule requires that "absent exceptional circumstances, federal courts typically should abstain from hearing cases that challenge tribal court jurisdiction until tribal court remedies, including tribal appellate review, are exhausted." *Crowe*, 640 F.3d at 1149.  The rule is based on strong policy interests recognizing tribal sovereignty, including "(1) furthering congressional policy of supporting tribal self-government; (2) promoting the orderly administration of justice by allowing a full record to be developed in the tribal court; and (3) obtaining the benefit of tribal expertise if further review becomes necessary." *Kerr-McGee*, 115 F. 3d at 1507.

Because "the existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty [and] the extent to which that sovereignty has been altered, divested, or diminished . . . that examination should be conducted in the first instance in the Tribal Court itself." *National Farmers,* 471 U.S. at 855–56. That way, federal courts will have the benefit of a full factual record on the relevant issues and the benefit of tribal court expertise. *Id.* at 856–57.

Until the tribal court's appellate review of the question presented in federal court is complete, the complaining party has not exhausted its tribal court remedies. *See Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 16 ("[R]espect for tribal legal institutions requires that they be given a full opportunity to consider the issues before them and to rectify any errors. The federal policy of promoting tribal self-government encompasses the development of the entire tribal court system, including appellate courts." (internal quotation marks omitted)).

The Tribal Town first argues that it has already exhausted its claims in tribal court. We disagree. The Muscogee Supreme Court has yet to reach a final decision on its jurisdiction over the Tribal Town in either *Anderson I* or *Anderson II*. To recap, the Tribal Town initially submitted to the jurisdiction of the Muscogee courts in 2007 when, in *Anderson I*, it alleged that Anderson had attempted a coup d'etat. The Muscogee Supreme Court held it had jurisdiction in

-23-

*Anderson I*, reasoning that members of the Tribal Town were Creek Indians. It based its reasoning on the fact that, before the Tribal Town submitted its constitution for federal government recognition in 1939, the Tribal Town "was a tribal town of the Muscogee (Creek) Nation and as such its members were citizens of the Creek Nation." App. 63. Thus, according to the Muscogee court, the Thlopthlocco Constitution expressly preserved members' status as Creek Indians, and, as a result, the Tribal Town's status as a "Muscogee (Creek) tribal town" remained intact. *Id.*

But, at the time the Muscogee Supreme Court issued that decision, the Tribal Town's consent to the Muscogee courts' jurisdiction was still in effect. In fact, the court's opinion concludes, "[t]he members of Thlopthlocco Tribal Town, as citizens of the Muscogee Nation, have requested relief in the courts of the Muscogee (Creek) Nation. Neither the Town nor its members will be abandoned by the Nation's courts." *Id.* at 64. Thus, we do not consider the 2007 opinion to be the Muscogee Supreme Court's final answer to the question of sovereign immunity.

The Tribal Town later withdrew its claims in tribal court, along with its waiver of sovereign immunity, and asserted that the Muscogee courts could no longer exercise jurisdiction. Thereafter, the Muscogee district court held that it may exercise jurisdiction over the Tribal Town even without its consent. The

-24-

Tribal Town requested an interlocutory appeal to challenge that decision, which the Muscogee Supreme Court denied. Although the opinion suggested the court denied the appeal because it stood by its earlier decision that the Tribal Town was a part of the Muscogee Nation, a denial of an interlocutory appeal does not finally resolve the legal and jurisdictional issues in the case. The Tribal Town is still entitled to seek appellate review in the Muscogee Supreme Court after the Muscogee district court completes its fact finding and reaches a decision on the merits. When the Muscogee Supreme Court decides the appeal at that time, the tribal court will have reached a final decision resolving its jurisdiction over the Tribal Town.

The Tribal Town alternatively argues that, even though we have determined it has not yet exhausted its tribal court remedies, this case should be excepted from the tribal exhaustion rule. The Supreme Court recognizes several exceptions to the rule: (1) where "an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith"; (2) "where the action is patently violative of express jurisdictional prohibitions"; and (3) "where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." *National Farmers*, 471 U.S. at 857. In addition, (4) where it is clear that the tribal court lacks jurisdiction and that judicial proceedings would

serve "no purpose other than delay," a federal court may excuse exhaustion. *Nevada v. Hicks*, 533 U.S. 369.[5]

To invoke these exceptions, we have required that the party make a substantial showing of eligibility. *See Kerr-McGee*, 115 F.3d at 1502 ("A substantial showing must be made by the party seeking to invoke [the exception for express jurisdictional prohibitions] to the tribal exhaustion rule."). And the exceptions are applied narrowly where "tribal courts are not given the first opportunity to determine their jurisdiction [that] typically involve situations where the federal court has exclusive jurisdiction." *Id.*

We think exhaustion is the better route in this case. No argument has been made that Muscogee court jurisdiction is motivated by harassment or bad faith. Nor can we say that the legal questions surrounding the Thlopthlocco Constitution and its relationship to the Muscogee Nation are so patently obvious as to defy exhaustion, especially given the opportunity to later challenge wrongly invoked subject matter jurisdiction.

---

[5] In *El Paso Natural Gas Co. v. Neztsosie*, the Court may have created yet another exception to the tribal exhaustion rule for the "rare" cases in which "Congress has expressed an unmistakable preference for a federal forum." 526 U.S. 473, 484 (1999); *see also* Conference of the Western Attorneys General, American Indian Law Deskbook 238–39 (4th ed.) (2008). The parties in the pending case have not argued that Congress has expressed such a preference in any applicable law, and, as a result, we do not address this exception here.

The Tribal Town's argument that exhaustion would be futile is not without some logic. The futility exception crafted in *National Farmers* applies where the federal court plaintiff will not have an adequate opportunity to challenge the tribal court's jurisdiction. *See, e.g.*, *Texaco, Inc. v. Zah*, 5 F.3d 1374, 1377 (10th Cir. 1993). As we have explained, the Tribal Town will have the opportunity to make its arguments before the Muscogee Supreme Court after the Muscogee district court has decided the merits of the case. But other circuits have held that the futility exception also bars application of the tribal exhaustion rule to tribes whose constitution does not create a judiciary—the Town's situation here. *See Comstock Oil & Gas Inc. v. Alabama & Coushatta Indian Tribes of Texas*, 261 F.3d 567, 572 (5th Cir. 2001) ("Because no tribal court properly existed, exhaustion was imprudent in the present dispute."); *Krempel v. Prairie Island Indian Cmty.*, 125 F.3d 621, 622 (8th Cir. 1997) (same). Although the Thlopthlocco Constitution does not provide for the creation of a judiciary, the Muscogee judicial officers' argument that the Tribal Town is merely a sub-part of the Muscogee Nation implies that the Muscogee Constitution, which empowers the Muscogee judiciary, applies to the Tribal Town. Thus, we cannot assess futility without delving into the central question here: the Thlopthlocco's independence in federal court from the Muscogee Nation's jurisdiction. On that subject, we conclude, as we describe below, that the federal courts will benefit from the legal analysis of the Muscogee Supreme Court.

-27-

As to the final exception for cases where exhaustion would serve no purpose other than delay, the Tribal Town argues that our decision in *Crowe* demonstrates we should not require exhaustion. In that case, we found that the tribal court's lack of jurisdiction over the non-Indian law firm was so clear that exhaustion would serve no purpose. But the arguments in *Crowe* are quite different than in this case. There, the Muscogee judge argued the Muscogee courts had jurisdiction over the Tribal Town's lawyers and their fee arrangement with the Tribal Town by virtue of the lawyers' membership in the Muscogee Nation's bar. We held that there was not "a sufficient nexus between Crowe's practice before the Muscogee (Creek) Nation courts and Judge Stidham's order requiring Crowe to return attorneys' fees already paid to it pursuant to its contract with the Thlopthlocco." *Crowe*, 640 F.3d at 1151. We did not determine the ultimate jurisdictional issues at stake here.[6]

We have already concluded that, for the purposes of creating federal question jurisdiction, federal law distinguishes between the tribes, but it does not

---

[6] It is true that, in *Crowe*, we wrote, "[w]hile the Creek Nation has jurisdiction to regulate its own citizens, the Thlopthlocco is an independent tribal entity that elects its own government pursuant to its own Constitution and is not itself a citizen of the Creek Nation." 640 F.3d at 1152. Although that excerpt helps to inform the question of whether the Tribal Town is a member of the Muscogee Nation under federal law, it does not decide the question of whether to require the Tribal Town to exhaust before the tribal courts, especially because, in *Crowe*, Judge Stidham did not argue that, under tribal law, the Tribal Town is a sub-part of the Muscogee Nation.

-28-

necessarily follow that the Muscogee courts cannot make a colorable claim that they have jurisdiction in the *Anderson* litigation. *See Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 920 (9th Cir. 2008) ("Principles of comity require federal courts to dismiss or to abstain from deciding claims over which tribal court jurisdiction is 'colorable.'"). We have not made any inquiry into whether, under tribal law, the tribes are distinct or into what effect that determination has on the tribal court's jurisdiction. Nor have we determined whether tribal law or federal law should define when a tribal court's involvement in a cause of action is an exercise of self-government.[7] And we have not considered whether there may be another reason, aside from the Tribal Town's alleged affiliation with the Muscogee Nation, that this case might implicate some significant Muscogee tribal interest. Thus, we cannot definitively say at this stage that the Tribal Town has made a "substantial showing" that, simply because it is not a member of the Muscogee Nation under federal law, this case is excepted from the tribal exhaustion rule.

Other reasons strengthen our prudential view that exhaustion is appropriate. The Supreme Court has emphasized that the tribal exhaustion rule is grounded in

---

[7] Nor have we considered whether the tribe's powers of self-government include "the inherent power of Indian tribes . . . to exercise [] jurisdiction over *all* Indians" in civil suits as it does in criminal suits. *See* 25 U.S.C. § 1301(1)(2) (emphasis added); *see also Duro v. Reina*, 495 U.S. 676 (1990), *superseded by statute*, 25 U.S.C. § 1301.

-29-

the federal policy supporting tribal self-government. *See Iowa Mutual Insurance Company v. LaPlate*, 480 U.S. 9, 15–16 (1987); *see also* 41 Am. Jur. 2d Indians; Native Americans § 145 ("[A] concern for tribal sovereignty forms the epicenter of the tribal exhaustion doctrine."). In addition, the Court has recommended exhaustion where the federal court may benefit from the tribal court's legal analysis. *See Kerr-McGee*, 115 F.3d at 1507 (citing *National Farmers*, 471 U.S. 856–57). In this case, the nature of the Tribal Town's affiliation with the Muscogee Nation is at the heart of this dispute, and, as a result, we cannot so easily determine whether the Muscogee Nation's interest in self-government entitles it to some level of involvement in the Tribal Town's affairs. We may benefit from the Muscogee Supreme Court's tribal law analysis of the Tribal Town's and Muscogee Nation's relationship, which the court has yet to fully articulate.

In addition, we may benefit from the court's analysis of the effect of the Tribal Town's withdrawal of its waiver of sovereign immunity. The Muscogee judicial officers have argued that the Muscogee rules of procedure prevent a sovereign from withdrawing a waiver when the sovereign initiated the suit and, in this way, tribal law varies significantly from federal law. *See, e.g.*, *Beers v. Arkansas*, 61 U.S. 527, 529 (1857) (providing that, under federal law, a sovereign

"may withdraw its consent whenever it may suppose that justice to the public requires it.").

In sum, we agree with the district court that the Tribal Town must exhaust its tribal court litigation before the federal courts can reach the merits of its claims for relief.

## 2. Abatement

Although we require exhaustion, abatement of this action is preferable to dismissal pending exhaustion of tribal court remedies. While the tribal exhaustion rule is generally "an inflexible bar to consideration of the merits of the petition by the federal court," *Texaco*, 5 F.3d at 1378, it does not preclude abating consideration of the merits until the tribal court has ruled. *See* 186 A.L.R. Fed. 27, *2a ("A court has the discretion to either dismiss or stay proceedings in such matters pending tribal court exhaustion."); *see also Crowe*, 640 F.3d at 1149 ("Comity considerations inherent in federal-tribal litigation compel us to assess whether we must abate this federal action in order to permit [the plaintiff] to exhaust its jurisdictional claims in the [tribal] courts."); *Superior Oil Co. v. United States*, 798 F.2d 1324, 1329 (10th Cir. 1986) ("[In *National Farmers*], [t]he Court left the question whether, during the time period required for exhaustion of Tribal Court remedies, the federal action should be dismissed or merely held in abeyance for determination of the federal District Court.");

-31-

*Gaming World Int'l, Ltd. v. White Earth Band of Chippewa Indians*, 317 F.3d 840, 849 (8th Cir. 2003) (holding that the tribal exhaustion rule "is prudential, rather than jurisdictional").

Abatement will protect the Tribal Town's position in this litigation. The Tribal Town argues that if the tribal courts rule in favor of Anderson, he may gain control of the Tribal Town's governing body, the Business Committee, and thereby of the Tribal Town's role in this litigation. In that event, the Tribal Town argues he could prevent it from filing a cause of action in federal court. Abatement will enable the district court to exercise its jurisdiction on the merits after exhaustion in tribal court regardless of the outcome there.[8]

For the same reasons, the district court should consider joining additional interested parties on remand. The district court has already determined that the *Anderson I* defendants and the *Anderson II* plaintiffs are necessary parties under Federal Rule of Civil Procedure 19. Other persons may be as well. For example, the *Anderson I* cross-claim defendants, who are members of the Thlopthlocco

---

[8] The Tribal Town has also alleged that, if we do not act now, the tribal court may force the Tribal Town to hold an election and include Anderson and the other *Anderson II* plaintiffs on the ballot. But the record reveals that the Muscogee Supreme Court has stayed its consideration of *Anderson II* until it decides *Anderson I*. Thus, we expect the tribal court to reach a final decision on the jurisdictional issue before it considers ordering an election. Accordingly, the Tribal Town will have the opportunity to exhaust its tribal court remedies and return to federal court before the tribal court has taken an action that the Tribal Town might not be able to challenge effectively.

Business Committee, may have an interest in federal court review of the Muscogee courts' exercise of jurisdiction. Their authority to represent the Tribal Town is the central question before the tribal court, and, as a result, they have an interest in the lawfulness of the tribal court's jurisdiction over their case. For the same reasons, the remaining *Anderson II* defendants of record, who are members of the Thlopthlocco Election Committee, may also have a stake in the federal court litigation. The district court should consider whether they are necessary parties under Rule 19. *See U.S. Cellular Inv. Co. v. Sw. Bell Mobile Sys., Inc.*, 124 F.3d 180, 182 (10th Cir. 1997) ("The matter of a party's absence can be raised at any time and should be raised by a court *sua sponte*"); *see also* John Bourdeau et al.*, 25 Fed. Proc., L. Ed. § 59:99 (2014) ("Federal courts have an independent duty to protect absent necessary parties from any threat of serious injustice, and thus, the courts can *sua sponte* invoke the rule governing joinder of necessary parties.").

Thus, regardless of the outcome of the suits in tribal court, the Tribal Town will have the opportunity to seek meaningful relief in federal court.

### E.  *Preliminary Injunction*

The Tribal Town has also appealed the district court's failure to consider its motion to preliminarily enjoin the Muscogee judicial officers' exercise of

jurisdiction. Because the district court dismissed this case on jurisdictional grounds, it did not address the merits of the request for a preliminary injunction.

Since we are remanding for exhaustion in tribal court, the Tribal Town's request is premature. After exhaustion, the Tribal Town can ask the district court to consider injunctive relief based on the status of the case at that time.

## III. Conclusion

Because the Tribal Town raises an issue of federal common law, we have subject matter jurisdiction under 28 U.S.C. § 1331. We find the Muscogee judicial officers are not entitled to sovereign immunity, that the district court should consider the feasability of joining certain necessary parties, and that exhaustion in tribal court is necessary. Accordingly, we REVERSE the district court's dismissal and REMAND for additional proceedings to join necessary parties. After those proceedings are complete, we direct the district court to abate further proceedings until the plaintiffs exhaust tribal court remedies.