OSCN Found Document:ANDERSON et al. v. PARRISH et al.

 

 
 ANDERSON et al. v. PARRISH et al.2026 OK 36Case Number: 123548Decided: 05/19/2026SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2026 OK 36, __ P.3d __

 

Nathan Anderson, Ryan Herrod, Wesley Montemayor, Leyahna Hicks, Malinda Noon, Inda McGrit, Jason Sawyer, Joyce Noon, Summer Barnes, Leeanna Tomah, Individually and as elected officials of the Thlopthlocco Tribal Town, a federally recognized Indian Tribe, Petitioners,
v.
The Honorable Lawrence Parish, District Judge of Okfuskee County, Oklahoma, Respondent,
and
Plaintiffs holding themselves out as Thlopthlocco Tribal Town, a federally recognized Indian Tribe in Case No. CJ-2025-79 in District Court of Okfuskee County, Real Party in Interest.

APPLICATION TO ASSUME ORIGINAL JURISDICTION 

¶0 Petitioners ask this Court to assume original jurisdiction and issue a Writ of Prohibition restraining the Okfuskee County District Court from exercising jurisdiction in the case styled Thlopthlocco Tribal Town v. (Group 1) Brent Smith, et al. and (Group 2) Nathan Anderson, et al. Case No. CJ-2025-79, Okfuskee County District Court, Oklahoma. Original Jurisdiction assumed; Writ of Prohibition granted.

ORIGINAL JURISDICTION ASSUMED;

WRIT OF PROHIBITION GRANTED.

Jon Velie, Velie Law, Norman, Oklahoma for Petitioners.

Michael Salem, Salem Law Offices, Norman, Oklahoma and Jerry L. Colclazier, COLCLAZIER & ASSOCIATES, Seminole, Oklahoma for the Real Party in Interest.

 

OPINION

ROWE, C.J.: 

BACKGROUND 

¶1 The Thlopthlocco Tribal Town (hereinafter "Tribe") is a federally recognized Indian Tribe under 25 U.S.C. § 5131, located in Okfuskee County, Oklahoma. Tribe is governed by a ten-member Business Committee consisting of five elected officers including a Town King, two Warriors, a Secretary, a Treasurer, and five advisory members appointed by the elected officers ("Business Committee").

¶2 For the past eighteen years, Tribe has been entangled in litigation spanning across the Muscogee (Creek) Nation courts and federal courts, concerning questions of tribal leadership and tribal sovereign immunity.

Litigation History

¶3 In January 2007, Nathan Anderson ("Anderson") was elected Town King. Anderson ousted the Business Committee members and appointed nine of his supporters to the Business Committee. See Thlopthlocco Tribal Town v. Stidham, 762 F.3d 1226, 1232 (10th Cir. 2014). The ousted Business Committee members, holding themselves out as Tribe, waived sovereign immunity and sued Anderson in the Muscogee (Creek) Nation District Court ("Tribal District Court"), seeking injunctive relief and a declaration that the ousted Committee members were "the lawful leaders of Thlopthlocco." See Thlopthlocco Tribal Town v. Anderson, No. CV-2007-39, 2007 WL 9192765 (M. (Cr.) Dist. Ct. June 11, 2007) ("Anderson I"). Tribe simultaneously initiated efforts to remove Anderson as Town King through Tribe's grievance procedure, resulting in his removal in July 2007.

¶4 After Anderson's removal, Tribe withdrew its waiver of sovereign immunity and sought dismissal of the case, which the Tribal District Court denied. Tribe filed an interlocutory appeal in the Muscogee (Creek) Nation Supreme Court ("Tribal Supreme Court") challenging the Tribal District Court's order denying its motion to dismiss. Tribe simultaneously sought injunctive relief in the United States District Court for the Northern District Court of Oklahoma ("Federal Court"), arguing that the Tribal District Court was unlawfully exercising jurisdiction over Tribe. The Federal Court case was stayed, pending the Tribal Supreme Court's decision in the interlocutory appeal. In March 2012, the Tribal Supreme Court denied the interlocutory appeal and remanded the case for fact-finding.

¶5 In 2011, Tribe was scheduled to elect a new Business Committee, but prior to the election Anderson filed an action in the Tribal District Court alleging that Business Committee members and members of the Thlopthlocco Election Committee illegally removed him and other candidates from the ballot. ("Anderson II"). The Tribal District Court suspended the election, held a multi-day hearing, and ordered Tribe to place Anderson on the ballot. See Thlopthlocco Tribal Town v. Wiley, No. 24-5011, 2024 WL 5052986, at *2 (10th Cir. Dec. 10, 2024). Tribe sought a writ of mandamus in the Tribal Supreme Court, which was denied as untimely. Id.

¶6 The Federal Court case resumed in 2013, wherein the federal court found it lacked subject matter jurisdiction because the case involved an intratribal dispute. On appeal, the Tenth Circuit Court of Appeals disagreed, holding "whether a tribal court has exceeded its jurisdictional authority is a question of federal common law" over which federal courts have subject matter jurisdiction. Stidham, 762 F.3d at 1234. The case was remanded to the Federal Court with instructions to abate further proceedings until Tribe exhausted its claims in the Tribal District Court. Id. at 1242.

¶7 In 2021, the Tribal District Court dismissed Anderson I as moot and ordered Tribe to hold an election. On appeal, the Tribal Supreme Court dismissed Anderson I and Anderson II, but declared that Tribe, a federally recognized band of the Muscogee (Creek) Nation, is entitled to sovereign immunity in the courts of the Muscogee (Creek) Nation. The Tribal Supreme Court did not address whether Tribe could withdraw its waiver of sovereign immunity.

¶8 After exhausting its claims in the tribal courts, Tribe sought declaratory judgment in the Federal Court that Tribe had authority to withdraw its waiver of sovereign immunity. The Federal Court granted Tribe's motion for declaratory judgment, finding "[Tribe] may withdraw its waiver of sovereign immunity in the Muscogee (Creek) Nation Courts if the tribal courts' exercise of jurisdiction exceeds the terms and conditions of the waiver." Thlopthlocco Tribal Town v. Wiley, 710 F. SupP.3d 1043, 1061 (N.D. Okla. 2023). On appeal, the Tenth Circuit vacated the Federal Court's judgment and dismissed the case as moot. Wiley, 2024 WL 5052986, at *8.

Present Litigation

¶9 From 2011 to 2025, Business Committee has not held an election, but rather appointed interim Town Kings and other officers to serve. 

¶10 In March 2025, BIA sent a letter to then acting Town King, Ryan Morrow ("Morrow"), questioning the validity of the election results submitted by Anderson. Counsel for Tribe responded, noting that Anderson was falsely purporting to be a tribal official. Tribe explained that Anderson's election occurred at a meeting that was neither set nor approved by the existing Business Committee and was not held in accordance with the Election Ordinance adopted by the Business Committee in July 2022.

¶11 Morrow resigned as acting Town King in April 2025, resulting in the existing Business Committee's appointment of Brent Brown (hereinafter "Brown") as the acting Town King. 

¶12 On October 23, 2025, the existing Business Committee passed "Thlopthlocco Tribal Town Tribal Resolution No. 2025-22" ("Resolution") which outlined the present dispute and noted that any person claiming to be a newly elected or appointed member of the Thlopthlocco Business Committee "is declared a trespasser on Thlopthlocco Tribal property. . ." 

¶13 On behalf of Tribe, Brown and the existing Business Committee filed a temporary restraining order against Smith for trespass in Okfuskee County District Court. 

¶14 Judge Parish denied Anderson's motion to dismiss and concluded:

the existing Business Committee, which took office in 2007, which has been recognized by the Muscogee Supreme Court and allowed to represent Thlopthlocco Tribal Town before the United States Court of Appeals for the Tenth Circuit is the present Business Committee and their offices have not been vacated nor have their successors been elected. Under the Thlopthlocco Constitution, the existing Business Committee speaks on behalf of the Tribal Town on all matters and is the only authorized Thlopthlocco officials that can call an election. The existing Business Committee has not called any election, but is in the process of organizing for an election, establish civil and judicial codes and establish a judiciary with the assistance of the BIA.

Court Minute, No. CJ-2025-79, Okfuskee County, Oklahoma, Petitioner's Appendix, Ex. B, ANDERSON000023.

¶15 In a letter dated November 21, 2025, BIA declined to recognize leadership of Tribe, noting "it is evident that the [Tribe] is embroiled in an intra tribal political leadership dispute." 

¶16 Anderson petitioned this Court to assume original jurisdiction, seeking: (1) a Writ of Prohibition barring Okfuskee County District Court from proceeding for lack of subject matter jurisdiction and (2) a stay of the emergency temporary restraining order until the original proceeding is resolved. 

STANDARD OF REVIEW 

¶17 This Court assumes original jurisdiction in the exercise of our general superintending control over all inferior courts and all agencies, commissions, and boards created by law under Okla. Const. art. 7, § 4. Maree v. Neuwirth, 2016 OK 62374 P.3d 750Id. (citing Baby F. v. Okla. Cty. Dist. Ct., 2015 OK 24348 P.3d 1080

¶18 The standard of review for questions concerning the jurisdictional power of the trial court to act is de novo. Dilliner v. Seneca-Cayuga Tribe, 2011 OK 61258 P.3d 516

DISCUSSION

¶19 Anderson contends the Okfuskee County District Court lacks subject matter jurisdiction to proceed in the present case because the case involves an intratribal leadership dispute. Specifically, Anderson argues that the underlying claims are rooted in a dispute over leadership and governance of Tribe, which would require the state court to interpret Tribe's constitution and tribal laws--falling outside the scope of state court subject matter jurisdiction.

¶20 Conversely, Brown contends there is no dispute on who constitutes the Business Committee, and the Okfuskee County District Court's exercise of jurisdiction is proper because Tribe waived its sovereign immunity to proceed in state court over a trespass matter. To support his argument, Brown asserts that Tribe has had the same existing Business Committee with various replacements since 2007, which has been recognized as the governing body of Tribe by the Tribal Supreme Court. Specifically, Brown contends the Tribal Supreme Court's recognition is entitled to full faith and credit by Oklahoma state courts. Brown also contends that the underlying case solely concerns civil trespass as the existing Business Committee's adoption of the Resolution resolved any "internal dispute" that may have existed.

An intratribal leadership dispute exists.

¶21 Subject matter jurisdiction is the "power to deal with the general subject involved in the action" and includes the power of the court "to proceed in a case of the character presented, or power to grant the relief sought." Matter of S.J.W., 2023 OK 49535 P.3d 1235Dutton v. City of Midwest City, 2015 OK 51353 P.3d 532Id. (citing Pointer v. Hill, 1975 OK 73536 P.2d 358Id. (citing In re A.N.O., 2004 OK 3391 P.3d 646

¶22 In cases involving Indian tribes, the scope of subject matter jurisdiction is limited by principles of tribal sovereignty and self-government. Indian tribes are "distinct, independent political communities, retaining their original natural rights" in matters of local self-government. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 55 (1978).

¶23 Federal Indian law has uniformly held that disputes concerning intratribal governance--including election disputes and competing claims to tribal leadership--are nonjusticiable. See Newtok Vill. v. Patrick, 21 F.4th 608, 620 (9th Cir. 2021) (holding intratribal disputes are generally nonjusticiable in federal courts); Sac & Fox Tribe of the Miss. in Iowa, Election Bd. v. Bureau of Indian Affs., 439 F.3d 832, 835 (8th Cir. 2006) (noting the courts have characterized election disputes between competing tribal councils as nonjusticiable, intratribal matters); In re Sac & Fox Tribe of Miss. in Iowa/Meskwaki Casino Litig., 340 F.3d 749, 763 (8th Cir. 2003) (holding jurisdiction to resolve internal tribal disputes, interpret tribal constitutions and laws, and issue tribal membership determinations lies with Indian tribes and not in the district courts); Goodface v. Grassrope, 708 F.2d 335, 339 (8th Cir. 1983) (holding the district court overstepped the boundaries of its jurisdiction in interpreting the tribal constitution and bylaws and addressing the merits of the election dispute); Motah v. United States, 402 F.2d 1, 2 (10th Cir. 1968) (holding the district court properly dismissed the action for lack of jurisdiction because the action stemmed from an internal controversy among Indians over tribal government).

¶24 The principle that federal courts lack jurisdiction over intratribal disputes applies equally to state courts. See Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 15 (1987) (holding if state-court jurisdiction over Indians or activities on Indian lands would interfere with tribal sovereignty and self-government, the state courts are generally divested of jurisdiction as a matter of federal law). Accordingly, the threshold inquiry is whether this case presents an intratribal governance dispute.

¶25 Tribe has been entangled in litigation concerning its leadership for over eighteen years. During that period, Tribe has not successfully held an election, but instead appointed interim Business Committee members, creating a long-standing governance question. And most recently, three separate factions have asserted authority over Tribe.

¶26 Despite this history, Brown claims an intratribal dispute does not exist. To support his conclusion, Brown relies on two primary arguments. First, Brown argues the Tribal Supreme Court recognized the existing Business Committee as the Tribe's governing body and that the decision is entitled to full faith and credit under Rule 30 for District Courts of Oklahoma. 

¶27 The Tribal Supreme Court's decision did not identify or affirm any individual or group as the Tribe's leadership. Rather, the Tribal Supreme Court held that (1) the Tribe was entitled to sovereign immunity in Muscogee (Creek) Nation courts and (2) the tribal courts possessed jurisdiction over the underlying matter. the Tribe's governing body, and we decline to read into the opinion conclusions that were not expressly stated. Accordingly, we do not read the Tribal Supreme Court's opinion as recognition of the existing Business Committee as Tribe's governing body.

¶28 Secondly, Brown fails to cite any authority which requires state courts to give deference to a tribal resolution passed by a governing body whose authority is contested, nor are we aware of any authority that exists. Moreover, Brown's pleadings illustrate the existence of an intratribal dispute. Brown sought declaratory relief to determine who properly constitutes the Business Committee, contradicting his argument that he is not asking the court to resolve the dispute or that the dispute has been resolved.

¶29 Developments since the filing of the underlying case further confirm that tribal leadership remains unsettled. The BIA has recently declined to recognize leadership of Tribe, noting "it is evident that the Tribal Town is embroiled in an intra-tribal political leadership dispute," 

¶30 Taken together, the record demonstrates that an active and unresolved dispute over tribal leadership exists. Deciding which group constitutes the lawful governing body would require interpretation of Tribe's constitution, evaluation of its electoral processes, and review of its governance structure--matters that fall squarely within the Tribe's inherent right of self-government. As such, this case presents precisely the type of question that state and federal courts have consistently declined to adjudicate. Such an intervention would impermissibly entangle Oklahoma state courts in Tribe's internal political affairs and undermine its sovereignty.

The purported waiver of sovereign immunity does not confer jurisdiction.

¶31 Brown also contends that Tribe waived its sovereign immunity to resolve the trespass claim; therefore, the state's exercise of jurisdiction does not infringe upon Tribe's self-government. While a tribe may waive its sovereign immunity, it "must be unequivocally expressed." Dilliner, ¶ 12, 258 P.3d at 519 (quoting Santa Clara Pueblo, 436 U.S. at 58)). Absent an effective waiver or consent, a state court may not exercise jurisdiction over a recognized Indian tribe. Id. (citing Puyallup Tribe, Inc. v. Dep't of Game of the State of Wash., 433 U.S. 165, 172 (1977)).

¶32 Brown's contention that Tribe waived its sovereign immunity does not confer jurisdiction on Oklahoma state courts. 

CONCLUSION

¶33 This case turns on whether an intratribal leadership dispute exists. This question is not purely incidental; it is the jurisdictional foundation upon which this case rests and when answered in the affirmative, it deprives the state district court of subject matter jurisdiction.

¶34 By proceeding in this matter, the district court accepted one faction's assertion of authority, treated its actions as those of the Tribe, and undertook to resolve a disputed issue of tribal governance. The district court's exercise of judicial power exceeded the scope of state court jurisdiction. Intratribal disputes concerning leadership, elections, and governance are nonjusticiable and must be resolved internally by Tribe. Because the district court is exercising jurisdiction over a nonjusticiable intratribal dispute, its actions are unauthorized by law. Absent intervention, the parties will be subjected to proceedings the Okfuskee County District Court has no power to conduct, resulting in injury for which there is no adequate remedy.

¶35 Original jurisdiction is assumed. The Writ of Prohibition is granted, and the case is remanded to the Okfuskee County District Court with instructions to dismiss.

ORIGINAL JURISDICTION ASSUMED;
WRIT OF PROHIBITION GRANTED.

Rowe, C.J., Kuehn, V.C.J., Winchester, Edmondson, Gurich, Darby, Kane and Jett (by separate writing), JJ., concur.

Combs, J., concurs in result.

FOOTNOTES

Id. at 4.

Id.

See Petitioner's Motion for Leave to File Reply, December 12, 2025, Petitioner's Appendix, Ex. G, Anderson000049.

Thlopthlocco Tribal Town v. Nathan Anderson, et al v. Ryan Morrow, et al. v. Nathan Anderson et al. v. Ryan Morrow, et al., SC-2021-03 (Muscogee (Creek) Feb. 28, 2022).

Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma, 498 U.S. 505 (1991), where the United States Supreme Court held a tribe did not waive sovereign immunity as to compulsory counterclaims. This case, however, is distinguishable. In Citizen Band Potawatomi Indian Tribe of Oklahoma, the Oklahoma Tax Commission sent the Potawatomis an assessment letter demanding the tribe pay uncollected Oklahoma state cigarette tax on cigarettes sold at a reservation convenience store. The Potawatomis filed suit in the United States District Court for the Western District of Oklahoma to enjoin the assessment. The Tax Commission counterclaimed, asking the Western District to enforce the demand against the tribe and enjoin the Potawatomis from selling cigarettes in the future without collecting and remitting state taxes on those sales. The Potawatomis moved to dismiss the counterclaims on grounds that the tribe had not waived its sovereign immunity and therefore could not be sued by the Tax Commission. The United States Supreme Court held the Potawatomis did not waive its sovereign immunity merely by filing an action for injunctive relief and dismissed the Tax Commission's counterclaims.

Here, Tribe sought an injunction and declaratory judgment and Anderson did not file counterclaims. Instead, Anderson challenged the district court's jurisdiction and sought a writ of prohibition in this Court to prevent further exercise of jurisdiction. A request for extraordinary relief such as a writ of prohibition or an appeal arising from the underlying action is not equivalent to a counterclaim or crossclaim.

This distinction is further reinforced by this Court's constitutional authority. Article VII, § 4 of the Oklahoma Constitution vests the Supreme Court with "general superintending control over all inferior courts" and grants it original jurisdiction to issue extraordinary writs, including writs of prohibition. Anderson's application for a writ of prohibition invokes this Court's constitutional authority to review and restrain the district court's exercise of jurisdiction. Accepting Brown's position would effectively insulate lower court proceedings from supervisory review whenever a tribe is a party--a result incompatible with article VII, § 4.

We reject Brown's argument that Tribe is immune from this original action and find Anderson's application to assume original jurisdiction falls squarely within this Court's constitutional authority and is not barred by Tribe's purported limited waiver of sovereign immunity.

 

JETT, J., with whom WINCHESTER, DARBY, and KANE, JJ., join, concurring specially:

¶1 A writ of prohibition should issue because the District Court for Okfuskee County lacks subject matter jurisdiction to decide the threshold issue in this case: which faction of the Thlopthlocco Tribal Town may lawfully govern the Tribe. My conclusion that the district court lacks subject matter jurisdiction is not based on the litigants' status as tribal members or because this dispute seems to have arisen in Indian Country. Rather, the district court's subject matter jurisdiction is preempted because determining the leadership of the Tribe would "unlawfully infringe on tribal self-government." Oklahoma v. Castro-Huerta, 597 U.S. 629, 638 (2022).

I.

¶2 To determine the extent of Oklahoma's jurisdictional authority over on-reservation activity, we must apply the framework set forth in Oklahoma v. Castro-Huerta, 597 U.S. 629 (2022). See In re S.J.W., 2023 OK 49535 P.3d 1235Milne v. Hudson, 2022 OK 84519 P.3d 511In re Stroble, 2025 OK 48cert. denied sub nom. Stroble v. Okla. Tax Comm'n, 25-382, 2026 WL 922510 (U.S. Apr. 6, 2026). "To begin with, the [U.S.] Constitution allows a State to exercise jurisdiction in Indian country." Castro-Huerta, 597 U.S. at 636. "When determining jurisdictional disputes for cases arising within the external boundaries of a reservation, we must remember that Oklahoma's sovereignty does not stop at reservation borders." In re S.J.W., 2023 OK 49Castro-Huerta, 597 U.S. at 637). "Indian country is part of the State, not separate from the State." Castro-Huerta, 597 U.S. at 636.

¶3 Oklahoma's jurisdiction "may be preempted (i) by federal law under ordinary principles of federal preemption, or (ii) when the exercise of state jurisdiction would unlawfully infringe on tribal self-government." Castro-Huerta, 597 U.S. at 638. To determine whether the exercise of state jurisdiction would unlawfully infringe upon tribal self-government, we apply a balancing test that considers "tribal interests, federal interests, and state interests." Id. at 649.

¶4 The present case deals with the extent of an Oklahoma district court's subject matter jurisdiction. The default rule set by the Oklahoma Constitution is that district courts may exercise subject matter jurisdiction in all justiciable matters. Okla. Const. art. VII, § 7(a) ("The District Court shall have unlimited original jurisdiction of all justiciable matters . . . ."); see also In re S.J.W., 2023 OK 49Id. The party challenging an Oklahoma district court's subject matter jurisdiction bears the burden of showing that Oklahoma's jurisdiction is preempted under the framework articulated in Castro-Huerta.

II.

¶5 To resolve the dispute between the parties in this case, the district court would be required to determine the threshold question of who the duly elected leaders of the Tribe are. The parties have not pointed to any congressional act that preempts Oklahoma state court's jurisdiction to adjudicate this question. Thus, we must apply the balancing test adopted in Castro-Huerta to determine whether state court adjudication of the tribal leadership question will unlawfully infringe on tribal self-government.

A.

¶6 The tribal interest. The Tribe's interest in being the sole entity that determines its own leadership is strong because the determination of one's leaders is at the heart of tribal self-government. The Tribe is a federally recognized Indian tribe. Thlopthlocco Tribal Town v. Stidham, 762 F.3d 1226, 1230 (10th Cir. 2014). The Tribe is governed by a Business Committee. Thlopthlocco Const. art. V, § 4. The Business Committee is composed of five officers who are elected by tribal members and an advisory board of tribal members appointed by the officers. Id. §§ 1, 3, 4. Only members of the Tribe may vote in elections. Id. §§ 1, 5.

¶7 The leadership of the Tribe is exclusively governed by tribal law and determined by tribal members. The Tribe's interest in determining its leadership weighs heavily against state jurisdiction in this case.

B.

¶8 The state interest. The State of Oklahoma has little sovereign interest in determining the leadership of the Tribe. The State of Oklahoma has no control over the Tribe's internal governance, does not approve or disapprove elections to the Business Committee, and has no role in tribal elections. Determining the leadership of the Tribe does not obviously affect the state's exercise of its police powers, and there is no indication that exercising jurisdiction would further a sovereign state interest like protecting public safety. Contra Castro-Huerta, 597 U.S. at 651.

¶9 If the State of Oklahoma, through its courts, exercised jurisdiction to determine the Tribe's leadership, there is a significant risk of deleterious effects on tribal self-government.

C.

¶10 The federal interest. The federal government's interest weighs against state court subject matter jurisdiction in this case. Congress "declare[d] its commitment to the maintenance of the Federal Government's unique and continuing relationship with, and responsibility to, individual Indian tribes and to the Indian people as a whole through the establishment of a meaningful Indian self-determination policy" in the Indian Self-Determination and Education Assistance Act. 25 U.S.C. § 5302(b). Additionally, the Oklahoma Indian Welfare Act recognized the Tribe's right to adopt a constitution and bylaws. 25 U.S.C. § 5203. The Tribe enacted a tribal constitution that places the determination of tribal leadership in the province of the tribe. In fact, the Bureau of Indian Affairs expressly refused to insert itself in a dispute that would require it to recognize the rightful leadership of the Tribe. Pet'r's Motion for Leave to File Reply, Dec. 12, 2025, Pet'r's App., Ex. F, ANDERSON000067. The federal interest is furthered by Oklahoma's abstention for determining the leadership of the Thlopthlocco Tribal Town.

* * *

¶11 The selection and determination governing leaders of the Thlopthlocco Tribal Town by its own members is the core aspect of tribal self-government. If the district court exercised subject matter jurisdiction to decide the threshold question in this case, it would unlawfully infringe on tribal self-government. Thus, the district court's subject matter jurisdiction is preempted under Castro-Huerta. I concur with the majority's issuance of a writ of prohibition.